UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| In Re Royal Bank of Scotland Group plc<br>Securities Litigation | ) <br> )    09 Civ. 300 (DAB) <br> ) <br> )    ECF Case <br> ) <br> )    Oral Argument Requested |

**THE ROYAL BANK OF SCOTLAND GROUP PLC'S
SUPPLEMENTAL MEMORANDUM OF LAW ADDRESSING
THE IMPACT OF *MORRISON V. NATIONAL AUSTRALIA BANK LTD.*
ON ITS PENDING MOTIONS TO DISMISS**

WILMER CUTLER PICKERING
  HALE AND DORR LLP
399 Park Avenue
New York, New York  10022
Telephone: 212-230-8800
Fax: 212-230-8888

# **TABLE OF CONTENTS**

PRELIMINARY STATEMENT .............................................................................................. 1

I. THE SUPREME COURT'S DECISION IN *MORRISON* REQUIRES DISMISSAL OF ALL CLAIMS BASED ON THE PURCHASE OR SALE OF SECURITIES OUTSIDE THE UNITED STATES ......................................................... 2

II. *MORRISON* REQUIRES DISMISSAL OF THE EXCHANGE ACT CLAIMS .............. 5

    A. Ordinary Shares Of RBS ................................................................................ 5

    B. American Depository Receipts ...................................................................... 6

III. THE EXCHANGE OFFER AND RIGHTS ISSUE CLAIMS MUST ALSO BE DISMISSED ................................................................................................................... 8

    A. Like The Exchange Act, The Securities Act Does Not Apply Extraterritorially .... 8

    B. The Exchange Offer Claims Do Not Involve Domestic Securities Transactions ... 9

    C. The Rights Issue Claims Do Not Involve Domestic Securities Transactions And Must Be Dismissed For Other Reasons .......................................... 10

IV. THE CLAIMS OF LEAD PLAINTIFFS MASSPRIM AND MISSPERS MUST BE DISMISSED ........................................................................................................... 12

V. IN THE ALTERNATIVE, THE COURT SHOULD STRIKE THOSE PORTIONS OF THE COMPLAINT, INCLUDING PLAINTIFFS' CLASS ALLEGATIONS, TO THE EXTENT THAT THEY PURPORT TO INCLUDE EXTRATERRITORIAL PURCHASES OF RBS ORDINARY SHARES ..................... 13

CONCLUSION ...................................................................................................................... 14

## **TABLE OF AUTHORITIES**

### **CASES**

*Central Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.*,
  511 U.S. 164 (1994) .................................................................................................... 8

*In re Alstom SA Securities Litigation*,
  406 F. Supp. 2d 346 (S.D.N.Y. 2005) ......................................................................... 8

*In re European Aeronautic Defense & Space Co. Seccurities Litigation*,
  No. 08 Civ. 5389, 2010 WL 1191888 (S.D.N.Y. Mar. 26, 2010) ................................ 6

*In re Initial Public Offering Securities Litigation*,
  241 F. Supp. 2d 281 (S.D.N.Y. 2003) ......................................................................... 6

*In re Initial Public Offering Securities Litigation*,
  No. 21 MC 92, 2008 WL 2050781 (S.D.N.Y. May 13, 2008) .................................. 13

*In re Lehman Brothers Securities & ERISA Litigation*,
  684 F. Supp. 2d 485 (S.D.N.Y. 2010) ......................................................................... 7

*In re Merrill Lynch & Co. Research Reports Securities Litigation*,
  375 B.R. 719 (S.D.N.Y. 2007) ................................................................................... 13

*In re Vivendi Universal, S.A. Securities Litigation*,
  381 F. Supp. 2d 158 (S.D.N.Y. 2003) ......................................................................... 8

*Jaffe v. Capital One Bank*,
  No. 09 Civ. 4106, 2010 WL 691639 (S.D.N.Y. Mar. 1, 2010) .................................. 13

*Lewis v. Casey*,
  518 U.S. 343 (1996) .................................................................................................... 7

*Morrison v. National Australia Bank Ltd.*,
  547 F.3d 167 (2d Cir. 2008) .................................................................................. 1, 3

*Morrison v. National Australia Bank Ltd.*,
  No. 08-1191, --- S. Ct. ---, 2010 WL 2518523 (U.S. June 24, 2010) .............. *passim*

*New Jersey Carpenters Health Fund v. Residential Capital, LLC*,
  No. 08 CV 8781, 2010 WL 1257528 (S.D.N.Y. Mar. 31, 2010) ......................... 7, 12

*New Jersey Carpenters Vacation Fund v. Royal Bank of Scotland Group, plc*,
  No. 09 Civ. 5093, 2010 WL 1172694 (S.D.N.Y. Mar. 26, 2010) ............................... 7

*Public Employees' Retirement System of Mississippi v. Merrill Lynch & Co.*,
   No. 08 Civ. 10841, 2010 WL 2175875 (S.D.N.Y. June 1, 2010) .......................................... 7

*Rahman v. Smith & Wollensky Restaurant Group, Inc.*,
   No. 06 Civ. 6198, 2008 WL 161230 (S.D.N.Y. Jan. 16, 2008) ........................................... 13

*SEC v. Berger*,
   322 F.3d 187 (2d Cir. 2003) ...................................................................................................... 8

*SEC v. Zandford*,
   535 U.S. 813 (2002) ................................................................................................................ 10

*Superintendent of Insurance v. Bankers Life & Casualty Co.*,
   404 U.S. 6 (1971) .................................................................................................................... 10

*Tsereteli v. Residential Asset Securitization Trust 2006-A8*,
   692 F. Supp. 2d 387 (S.D.N.Y. 2010) .................................................................................... 13

### STATUTES & RULES

15 U.S.C. §77e(a)(1) ........................................................................................................................ 8

17 C.F.R. § 230.901 ........................................................................................................................ 8

17 C.F.R. § 240.10b-5 .................................................................................................................... 6

Fed. R. Civ. P. 23(a) ..................................................................................................................... 13

Fed. R. Civ. P. 23(d)(1)(D) ........................................................................................................... 13

Defendant The Royal Bank of Scotland Group plc ("RBS") respectfully submits this supplemental memorandum of law to address the impact on its pending motions to dismiss of the Supreme Court's recent decision in *Morrison v. National Australia Bank Ltd.*, No. 08-1191, --- S. Ct. --- , 2010 WL 2518523 (U.S. June 24, 2010).

## PRELIMINARY STATEMENT

Pending before the Court in this putative global class action are a series of motions to dismiss filed by RBS and its co-defendants. In one such motion, RBS has moved, based on the Second Circuit's decision in *Morrison v. National Australia Bank Ltd.*, 547 F.3d 167 (2d Cir. 2008), to dismiss all "foreign-cubed" purchasers of RBS ordinary shares—that is, all non-U.S. persons who purchased shares of this non-U.S. issuer in a non-U.S. market, such as on a foreign stock exchange.

On November 30, 2009, in the course of the briefing process on the various motions to dismiss, the Supreme Court granted *certiorari* in *Morrison*. RBS thereupon requested that the Court permit limited re-briefing on the impact of the Supreme Court's forthcoming decision in *Morrison* on these motions, recognizing that that decision was "likely to clarify the extraterritorial reach, if any" of the applicable securities laws. The Court has authorized such submissions.[1]

As anticipated, the Supreme Court's decision in *Morrison* has clarified this issue. More than that, the Court's decision dramatically restricts the territorial reach of Section 10(b) of the Securities Exchange Act of 1934 ("the Exchange Act") and, by implication, the Securities Act of 1933 ("the Securities Act"). The Court rejected this Circuit's existing "conduct" and "effects"

---

[1] *See* RBS's Reply Memorandum of Law in Further Support of its Motions to Dismiss for Lack of Subject-Matter Jurisdiction and Under the *Forum Non Conveniens* Doctrine ("RBS SMJ Reply Br."), at 2-3; *see also* Letter of July 7, 2010 from Paul A. Engelmayer to Hon. Deborah A. Batts (endorsed July 8, 2010).

tests and replaced them with a bright-line test that limits the Exchange Act's reach *only* to purchases or sales of securities listed on an American stock exchange or to purchases and sales that otherwise occur in the United States. As a categorical rule, all purchases and sales that occur outside the United States, including on a foreign stock exchange, fall outside the statute's scope. That purchasers may be citizens or residents of the United States, or that acts related to the underlying allegations occurred in the United States, no longer matters.

Applied here, *Morrison* requires the dismissal of not only the claims brought under the Exchange Act on behalf of "foreign-cubed" purchasers. It requires the dismissal *in their entirety* of Plaintiff's Exchange Act claims (Counts One and Two), which relate to the purchase and sale of RBS ordinary shares. That is because (1) RBS's ordinary shares are listed and sold *only* on non-U.S. exchanges; and (2) as to U.S.-listed American Depository Receipts ("ADRs"), the purchase and sale of which the Exchange Act claims purport to encompass, no named plaintiff has alleged that he or she ever purchased such securities. There is, therefore, no named plaintiff with standing to pursue claims as to ADRs.

Importantly, Plaintiffs' remaining claims relating to ordinary shares, brought under the Securities Act, must also be dismissed, both for reasons related to *Morrison* and for other reasons. These are the Exchange Offer claims (Counts Six through Eight) and the Rights Issue claims (Counts Nine and Ten). The dismissal of these claims, in turn, requires the dismissal of Lead Plaintiffs MassPRIM and MissPERS, who purport to represent class members who purchased ordinary shares.

**I.    THE SUPREME COURT'S DECISION IN *MORRISON* REQUIRES DISMISSAL OF ALL CLAIMS BASED ON THE PURCHASE OR SALE OF SECURITIES OUTSIDE THE UNITED STATES**

Prior to the Supreme Court's decision, the Second Circuit had long utilized "conduct" and "effects" tests to assess whether a particular claim fell within the ambit of the Exchange Act

such that a district court had subject-matter jurisdiction to review it. *See Morrison*, 547 F.3d at 171. As a practical matter, where either (1) a U.S. citizen had purchased shares of a security or (2) a purchase took place in the United States, one or both of those tests were generally satisfied. However, as to "foreign-cubed" claims—in which the purchaser, the site of the sale, and the issuer were all non-U.S.—such jurisdiction depended on the facts of the particular case. The Second Circuit's decision in *Morrison* crystallized its standard for when the "conduct" test was met as to foreign-cubed claims. Under that decision, the decisive fact was where, within the corporate issuer, responsibility for the allegedly fraudulent filings and statements lay. *Id.* at 176. If, as in *Morrison* itself, executives of the foreign parent company were responsible for the issuance of those filings and statements, subject-matter jurisdiction under the Exchange Act was lacking; if, however, U.S.-based personnel were responsible for those filings and statements, there was such jurisdiction. *Id.*

Based on the Second Circuit's doctrine at the time, RBS moved in this case to dismiss all of plaintiffs' foreign-cubed claims. RBS demonstrated through unchallenged factual declarations that U.K.-based RBS—and not its U.S.-based subsidiaries—was at all times responsible for "present[ing] accurate information to the investing public." *Morrison*, 547 F.3d at 176. These included each of the filings and financial statements on which plaintiffs' case was based. (*See* RBS's Memorandum of Law in Support of Motions to Dismiss for Lack of Subject-Matter Jurisdiction and Under the *Forum Non Conveniens* Doctrine ("RBS SMJ Br."), at 9-20.)

The Supreme Court's decision in *Morrison* changes entirely the test for when a claim falls within the territorial scope of Section 10(b) of the Exchange Act. The Court expressly rejected the Second Circuit's fact-dependent "conduct" and "effects" tests. *Morrison*, 2010 WL 2518523, at *7-8. It also rejected alternative fact-dependent tests proposed by the plaintiff

petitioner and by the Solicitor General. *Id.* at \*9-10. The Court instead held, unequivocally, that Section 10(b) of the Exchange Act does not apply *at all* extraterritorially. *Id.* at \*10-11. Implementing that holding, the Court held that "Section 10(b) reaches the use of a manipulative or deceptive device or contrivance *only* in connection with the purchase or sale of a security listed on an American stock exchange, and the purchase or sale of any other security in the United States." *Id.* at \*14 (emphasis added); *accord id.* at \*11. The Court explained that this bright-line rule followed from the fact that domestic "purchase-and-sale transactions are the objects of the statute's solicitude." *Id.* at \*11. Thus, the Court stated, "it is in our view only transactions in securities listed on domestic exchanges, and domestic transactions in other securities, to which §10(b) applies." *Id.* As the Court put the point: "[T]he focus of the Exchange Act is not upon the place where the deception originated *but upon purchases and sales in the United States.*" *Id.* (emphasis added). The location of the transaction—and only that—determines whether Section 10(b) applies.

Importantly, in reaching this result, the Court rejected the idea that the Exchange Act was "intended to 'regulate' *foreign* securities exchanges." *Morrison*, 2010 WL 2518523, at \*11 (emphasis in original). And it "reject[ed] the notion that the Exchange Act reaches conduct in this country affecting exchanges or transactions abroad." *Id.* at \*12. For "[n]othing suggests that th[e] *national* public interest" vindicated by the Exchange Act "pertains to transactions conducted upon *foreign* exchanges and markets." *Id.* at \*9 (emphasis in original). To the contrary, the Court emphasized that the relevant public interest was purely *foreign*. The Court explained that "foreign countries regulate their domestic securities exchanges and securities transactions occurring within their territorial jurisdiction," and it credited the numerous amici who had observed that securities regulations abroad "often differ[] from ours." *Id.* at \*12. The

Court added: "The[se amici] all complain of the interference with foreign securities regulation that application of §10(b) abroad would produce, and urge the adoption of a clear test that will avoid that consequence. The transactional test we have adopted—whether the purchase or sale is made in the United States, or involves a security listed on a domestic exchange—meets that requirement." *Id.*

## II.   *MORRISON* REQUIRES DISMISSAL OF THE EXCHANGE ACT CLAIMS

Viewed in light of the Supreme Court's recent decision, Plaintiffs' Exchange Act claims (Counts One and Two), which are based on the purchase and sale of RBS ordinary shares, must be dismissed for failure to state a claim.

### A.   Ordinary Shares Of RBS

The requirement under *Morrison* to state a claim under the Exchange Act is unambiguous: "Section 10(b) [of the Exchange Act] reaches the use of a manipulative or deceptive device or contrivance *only* in connection with the purchase or sale of a security listed on an American stock exchange, and the purchase or sale of any other security in the United States." *Morrison*, 2010 WL 2518523, at *14 (emphasis added). The Consolidated Amended Complaint ("Complaint" or "CAC") does not make any such allegation as to RBS ordinary shares. It does not allege that RBS ordinary shares were purchased or sold on an American stock exchange or otherwise in the United States.

In fact, the opposite is true. (*See* Declaration of George Graham ("Graham Decl.") ¶ 14 (RBS ordinary, or common shares, are listed on the London Stock Exchange and Euronext Amsterdam; these shares are not listed, and have never been listed, on any U.S. exchange).)[2] And the Complaint implicitly acknowledges as much. (*See* CAC ¶¶ 33 (noting that RBS ordinary

---

[2] The Graham Declaration is contained within the Appendix of Declarations and Associated Exhibits filed with RBS's Memorandum of Law in Support of its Motions to Dismiss for Lack of Subject-Matter Jurisdiction and Under the *Forum Non Conveniens* Doctrine.

shares traded "on the London Stock Exchange, the Frankfurt Stock Exchange and the NYSE Euronext").)[3]  These are not "American stock exchange[s]."  *Morrison*, 2010 WL 2518523, at *14.  Accordingly, under *Morrison*, Plaintiffs cannot bring Exchange Act claims based upon the purchase of these shares.

### B. American Depository Receipts

The Complaint asserts that its Exchange Act claims encompass purchasers of American Depository Receipts ("ADRs"), which trade on the New York Stock Exchange ("NYSE").  (*See* CAC ¶ 33; *see also* Graham Decl. ¶ 15 (since October 2007, ADRs representing ordinary shares of RBS have been listed on the NYSE).)  Under *Morrison*, trades on the NYSE fall within the territorial ambit of the Exchange Act.  However, Plaintiffs cannot bring claims as to ADRs, because none of the Lead Plaintiffs in this action—including the two pension funds, MassPRIM and MissPERS, which purport to represent ordinary shareholders—claim to have ever purchased ADRs representing ordinary shares on the NYSE.[4]

Lead Plaintiffs have therefore failed to allege any injury "in connection with the purchase or sale" of ADR shares, as required under Section 10(b).  17 C.F.R. § 240.10b-5 (same).  Courts have repeatedly dismissed claims under such circumstances.  *See, e.g.*, *In re European*

---

[3] The NYSE Euronext is not a U.S. exchange.  Rather, it "is the largest and most liquid cash equities market in Europe . . . with entry points in Paris, Amsterdam, London, Brussels and Lisbon."  *See* http://www.euronext.com/landing/landingGeneral-188621-EN.html.  RBS "Ordinary Shares are listed and traded on Euronext Amsterdam by NYSE Euronext . . . ."  (Graham Decl. Ex. 2, Prospectus, Cover.)  NYSE Euronext also refers to the holding company for the NYSE Euronext exchange, *see* http://www.nyse.com/about/1088808971270.html, as well as three other equities markets—the NYSE, the NYSE Amex, and the NYSE Alternext.  *See* http://www.euronext.com/landing/listedSecurities-12650-EN.html.

[4] *See* Declaration of Catherine A. Torell in Support of the State Funds' Motion for Appointment as Co-Lead Plaintiffs, Appointment of Co-Lead Counsel and Consolidation of Related Actions, 09 Civ. 300 (DAB) (filed Mar. 13, 2009); Declaration of Jonathan K. Levine in Support of the Motion of the Freeman Group for Consolidation of Actions, Appointment as Lead Plaintiff, and Approval of Selection of Counsel, 09 Civ. 300 (DAB) (filed Mar. 13, 2009).  *See also In re Initial Pub. Offering Sec. Litig.*, 241 F. Supp. 2d 281, 347 n.76 (S.D.N.Y. 2003) (PSLRA certification was "integral to the complaint" and could be considered on a motion to dismiss).

*Aeronautic Def. & Space Co. Sec. Litig.*, No. 08 Civ. 5389, 2010 WL 1191888, at *2, 7 (S.D.N.Y. Mar. 26, 2010) (dismissing securities fraud claims after observing that "the Complaint is bereft of any allegations that putative class members purchased . . . common stock or ADRs in the United States"); *N.J. Carpenters Health Fund v. Residential Capital, LLC*, No. 08 CV 8781, 2010 WL 1257528, at *4 (S.D.N.Y. Mar. 31, 2010) ("[C]ourts in the Second Circuit and elsewhere have . . . concluded that a plaintiff must have purchased in the *particular offering* in order to have standing to challenge related material misstatements and omissions." (emphasis added)); *N.J. Carpenters Vacation Fund v. Royal Bank of Scotland Group, plc*, No. 09 Civ. 5093, 2010 WL 1172694, at *8 (S.D.N.Y. Mar. 26, 2010) (same); *Pub. Employees' Ret. Sys. of Miss. v. Merrill Lynch & Co.*, No. 08 Civ. 10841, 2010 WL 2175875, at *3 (S.D.N.Y. June 1, 2010) (holding that "because the named plaintiffs only purchased securities in nineteen offerings, any claim based on the other sixty-five offerings must be dismissed with prejudice"); *In re Lehman Bros. Sec. & ERISA Litig.*, 684 F. Supp. 2d 485, 490 (S.D.N.Y. 2010) (dismissing claims relating to 85 of 94 securities offerings because "no named plaintiff has alleged that he or she purchased Certificates in any of the other eighty-five offerings").[5]

The Exchange Act claims must therefore be dismissed in their entirety.

---

[5] MassPRIM and MissPERS cannot avoid this result by asserting that members of the class they seek to represent have actually made such purchases. *See Lewis v. Casey*, 518 U.S. 343, 357 (1996) ("[E]ven named plaintiffs who represent a class must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent." (internal citations and quotation marks omitted)).  Nor could the Freeman Group, by virtue of its status as counsel for purchasers of preferred shares, claim to represent purchasers of ADRs, as these are a different security. *See Pub. Employees' Ret. Sys. of Miss.*, 2010 WL 2175875, at *3 (rejecting argument that named plaintiffs could maintain claims based on securities purchases they did not make simply because, if class was eventually certified, named plaintiffs would presumably have claims against defendants based on different purchases they did make).

III. **THE EXCHANGE OFFER AND RIGHTS ISSUE CLAIMS MUST ALSO BE DISMISSED**

    A. **Like The Exchange Act, The Securities Act Does Not Apply Extraterritorially**

The Exchange Offer Claims and the Rights Issue Claims are brought under the Securities Act of 1933. (*See* CAC ¶¶ 27-28.) As *Morrison* confirms, that statute, like the Exchange Act, does not have extraterritorial reach. In explaining its determination that Section 10(b) of the Exchange Act solely concerns "purchases and sales within the United States," *Morrison*, 2010 WL 2518523, at *11, the Supreme Court pointedly likened that statute to the Securities Act. It wrote:

> The same focus on domestic transactions is evident in the Securities Act of 1933, 48 Stat. 74, enacted by the same Congress as the Exchange Act, and forming part of the same comprehensive regulation of securities trading. *See Central Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.*, 511 U.S. 164, 170-171 (1994). That legislation makes it unlawful to sell a security, through a prospectus or otherwise, making use of 'any means or instruments of transportation or communication in interstate commerce or of the mails,' unless a registration statement is in effect. 15 U.S.C. §77e(a)(1). The Commission has interpreted that requirement 'not to include . . . sales that occur outside the United States.' 17 C.F.R. §230.901 (2009).

*Id.* at *12.

It is, further, consistent with the Second Circuit's historical analysis to treat the territorial reach of the Securities Act as commensurate with that of the Exchange Act. *See, e.g., SEC v. Berger*, 322 F.3d 187, 192-93 (2d Cir. 2003) (applying then-applicable conduct and effects tests to claims brought under the Securities Act and the Exchange Act and noting that those tests applied to the "various statutes governing securities exchanges"); *In re Alstom SA Sec. Litig.*, 406 F. Supp. 2d 346, 368 & n.12 (S.D.N.Y. 2005) (same); *In re Vivendi Universal, S.A. Sec. Litig.*, 381 F. Supp. 2d 158, 169 (S.D.N.Y. 2003).

B.  **The Exchange Offer Claims Do Not Involve Domestic Securities Transactions**

Viewed in light of this analysis, the Exchange Offer claims (Counts Six through Eight) must be dismissed in their entirety. As with their other claims relating to ordinary shares, Plaintiffs seek to represent a global class for the Exchange Offer. This putative class expressly includes "shareholders outside the U.S." (CAC ¶ 644; *see also id.* ¶ 27 (claim brought on behalf of "all persons and entities . . . who tendered ABN AMRO ordinary shares in exchange for RBS ordinary shares").) But Plaintiffs fail to allege facts that establish that, as to any participating shareholder, the Exchange Offer was a domestic securities transaction and hence within the scope of the Securities Act.

The Exchange Offer transaction meets neither standard set out in *Morrison*. First, the RBS ordinary shares issued in the Exchange Offer were not "listed on an American stock exchange." *Morrison*, 2010 WL 2518523, at *14. Rather, as noted, such shares were listed on foreign exchanges. Plaintiffs do not allege otherwise. (*See, e.g.*, Supplemental Declaration of David S. Lesser ("Supp. Lesser Decl.")[6] Ex. 1, RBS Form F-4, at 16 (RBS ordinary shares issued in Exchange Offer to trade on London Stock Exchange and Euronext Amsterdam); *see also* CAC ¶ 33.)

Second, Plaintiffs do not allege that the sale to them of RBS ordinary shares pursuant to the Exchange Offer took place in the United States. *Morrison*, 2010 WL 2518523, at *14; *id.* at *12 (Securities Act does not include "sales that occur outside the United States"). And, even if such an allegation were made, *Morrison* would foreclose it as a basis for invoking the securities laws here, because the shares at issue (RBS ordinary shares) are undisputedly listed and

---

[6] The Supplemental Lesser Declaration and Associated Exhibits have been filed contemporaneously with this brief.

regulated abroad, and the Court flatly "reject[ed] the notion that the Exchange Act reaches conduct in this country *affecting exchanges* or transactions abroad." *Id.* at *12 (emphasis added).[7]

In any event, as the materials before the Court make clear, for U.S. and foreign participants alike, the "purchase or sale" of the RBS ordinary shares issued in the Exchange Offer occurred *outside* of the United States, via the United Kingdom's or Netherland's securities settlement system, CREST, operated by Euroclear UK & Ireland and Euroclear Nederland. (*See* Supp. Lesser Decl. Ex. 1, RBS Form F-4, at 110 ("The RBS ordinary shares . . . will be delivered within the CREST system to a CREST account designated by the tendering holder of ABN AMRO ordinary shares in its acceptance form . . . .").); *see also* Bank of England, http://www.bankofengland.co.uk/markets/paymentsystems/index.htm (describing the CREST system). Indeed, to participate in the Exchange Offer, participants were required to designate a U.K. or Netherlands CREST account into which their RBS ordinary shares would be placed. *See* Supp. Lesser Decl. Ex. 2, Exhibit 99.5 to RBS Form F-4. Plaintiffs thus fail to allege a securities transaction in the United States in connection with the Exchange Offer.

### C. The Rights Issue Claims Do Not Involve Domestic Securities Transactions And Must Be Dismissed For Other Reasons

Plaintiffs' Rights Issue claims (Counts Nine and Ten) must also be dismissed. Those claims are asserted on behalf of a putative global class, composed of "all persons and entities . . . who purchased or otherwise acquired RBS ordinary shares issued by RBS pursuant to the Rights

---

[7] The Supreme Court's statement that the Exchange Act applies to "domestic transactions in other securities" besides those listed in the United States appears to refer to domestic transactions in *unlisted* securities (e.g., over-the-counter securities that do not qualify for listing on a domestic exchange), as opposed to securities listed on foreign exchanges. *See, e.g.*, *Morrison*, 2010 WL 2518523, at *12 & n.10; *cf. Superintendent of Ins. v. Bankers Life & Cas. Co.*, 404 U.S. 6, 12 (1971) (Section 10(b) applies "to the purchase or sale of securities whether conducted in the organized markets or face to face"); *SEC v. Zandford*, 535 U.S. 813, 822 (2002) (same).

Issue prospectus." (CAC ¶ 28.) But as explained in RBS's motion to dismiss, the Rights Issue was not a U.S. public offering, and, under settled precedent, it therefore falls entirely outside the scope of the Securities Act. (*See* RBS's Memorandum of Law in Support of its Motion to Dismiss the Consolidated Amended Complaint for Failure to State a Claim ("RBS MTD Br.") 66-67.)

Indeed, U.S. shareholders were generally excluded from participation in the Rights Issue.[8] To the extent U.S.-based investors participated in the Rights Issue, they did so not in a public offering but through narrow exceptions, such as that for Qualified Institutional Buyers ("QIBs") under Rule 144A of the Securities Act. (Graham Decl. ¶ 68; see also *id.* Ex. 2, Rights Issue Prospectus ("Prospectus"), Part III, § 2.6.7.) Such shareholders—which include Lead Plaintiffs MissPERS and MassPRIM—attested to their QIB status and thereby became Qualifying Shareholders by executing an Investor Letter (*Id.* ¶ 68; *see also id*. Ex. 3, QIB Instruction Letter; *id.* Ex. 3, Investor Letter), not by participating in a U.S. public offering. (*See* Declaration of Christopher J. Meade[9] Ex. 7, MissPERS Investor Letter; *id.* Ex. 8, MassPRIM Investor Letter.)

Further, as we have explained, even if Rights Issue participants otherwise had a cognizable Securities Act claim, it would be subject to mandatory dismissal pursuant to a

---

[8] The Rights Issue was available only to "Qualifying Shareholders" (Graham Decl. Ex. 2, Prospectus, Part III), defined in the Rights Issue Prospectus as "holders of Ordinary Shares on the register of members of the Company at the Record Date with the exclusion (subject to certain exceptions) of Shareholders with a registered address in the United States . . . ." (*Id.* Ex. 2, Prospectus, Part XIV.) The Prospectus further made clear that "New Shares . . . have not been and will not be registered under the US Securities Act or under any securities laws of any state or other jurisdiction of the United States and may not be offered, sold, taken up, exercised, resold, renounced, transferred or delivered, directly or indirectly, within the United States except pursuant to an applicable exemption from the registration requirements of the US Securities Act and in compliance with any applicable securities laws of any state or other jurisdiction of the United States." (*Id.* Ex. 2, Prospectus, Part III, § 2.6.2.)

[9] The Meade Declaration is contained within the Appendix of Declarations and Associated Exhibits filed with RBS's Memorandum of Law in Support of its Motions to Dismiss for Lack of Subject-Matter Jurisdiction and Under the *Forum Non Conveniens* Doctrine.

binding forum selection clause, which grants "exclusive jurisdiction" to "[t]he courts of England and Wales . . . to settle any dispute which may arise out of or in connection with the Rights Issue." (Graham Decl. Ex. 2, Prospectus, Part III, § 2.9.; *see* RBS SMJ Br. 35-39; RBS SMJ Reply Br. 7-8.) It follows that the Rights Issue claims must be dismissed, without even considering the impact of *Morrison*.

*Morrison* reveals an additional fatal deficiency in these claims: The Rights Issue did not involve a domestic securities transaction. Like the shares issued pursuant to the Exchange Offer, the shares issued pursuant to the Rights Issue were RBS ordinary shares, which, as noted, are listed abroad, not on an American exchange.[10] This fact is dispositive. *See* Part II.A, *supra*.[11]

## IV. THE CLAIMS OF LEAD PLAINTIFFS MASSPRIM AND MISSPERS MUST BE DISMISSED

Lead Plaintiffs MassPRIM and MissPERS were appointed by this Court to represent a putative class of purchasers of RBS ordinary shares. For the reasons stated above, all claims based upon purchases of RBS ordinary shares—whether acquired on a foreign exchange, pursuant to the October 2007 Exchange Offer, or pursuant to the April 2008 Rights Issue—must be dismissed. Dismissal of these claims would leave Lead Plaintiffs MassPRIM and MissPERS without standing to assert any of the remaining claims, which are based on the purchase of preferred shares. *See N.J. Carpenters Health Fund*, 2010 WL 1257528, at *4 (plaintiff must have purchased in offering in question to have standing to challenge "related material misstatements and omissions"). Those Lead Plaintiffs should therefore be removed from this

---

[10] The Rights Issue was "*not* extended to any holders of the Company's American Depository Shares held in the form of American Depository Receipts," (Graham Decl. Ex. 3, QIB Instruction Letter (emphasis in original)), nor were ADRs issued in the Rights Issue. Rather, the Rights Issue was available *only* to holders of RBS ordinary shares (*Id.* Ex. 2, Prospectus, Part II) and the *only* new shares issued in the Rights Issue were RBS ordinary shares. (*Id.* Ex. 2, Prospectus, Part XIV; *see also* CAC ¶ 28.)

[11] Even if it were not, Plaintiffs have not alleged facts to establish that the Rights Issue constituted the sale of a security *in the United States*.

action.  See *Tsereteli v. Residential Asset Securitization Trust 2006-A8*, 692 F. Supp. 2d 387, 396 n.67 (S.D.N.Y. 2010) (dismissing claims of named plaintiff who lacked standing); *In re Merrill Lynch & Co. Research Reports Sec. Litig.*, 375 B.R. 719, 724-26 (S.D.N.Y. 2007) (same).

V. **IN THE ALTERNATIVE, THE COURT SHOULD STRIKE THOSE PORTIONS OF THE COMPLAINT, INCLUDING PLAINTIFFS' CLASS ALLEGATIONS, TO THE EXTENT THAT THEY PURPORT TO INCLUDE EXTRATERRITORIAL PURCHASES OF RBS ORDINARY SHARES**

This Court has the authority to strike from the Complaint any class allegations that cannot survive the analysis set forth in *Morrison*.  See Fed. R. Civ. P. 23(d)(1)(D) ("[T]he court may issue orders that . . . require that the pleadings be amended to eliminate allegations about representation of absent persons and that the action proceed accordingly.").  Courts in this District have granted motions to dismiss or strike class allegations before the class certification stage, observing that such matters "may be addressed 'prior to the certification of the class if the inquiry would not mirror the class certification inquiry and if resolution of the motion . . . is clear.'"  *Jaffe v. Capital One Bank*, No. 09 Civ. 4106, 2010 WL 691639, at *10 (S.D.N.Y. Mar. 1, 2010) (quoting *In re Initial Pub. Offering Sec. Litig.*, No. 21 MC 92, 2008 WL 2050781, at *2 (S.D.N.Y. May 13, 2008)); *see also Rahman v. Smith & Wollensky Rest. Group, Inc.*, No. 06 Civ. 6198, 2008 WL 161230, at *1, *3-5 (S.D.N.Y. Jan. 16, 2008) (granting motion "to dismiss certain of the class allegations" pursuant to Fed. R. Civ. P. 12(b)(1) and 23(d)(1)(D) before class certification stage).

The inquiry here concerns whether claims brought by Plaintiffs would require the impermissible extraterritorial application of the U.S. securities laws.  This inquiry does not overlap with or resemble the class certification inquiry, which focuses on numerosity, commonality, typicality, and adequacy.  See Fed. R. Civ. P. 23(a).  Moreover, as demonstrated in Parts II-IV, *supra*, the resolution of these issues is clear.  Accordingly, in the event that the Court

does not dismiss in its entirety any of the Counts addressed in this motion (Counts One, Two, and Six through Ten), it should strike, as to that Count, any class allegations that are inconsistent with the decision in *Morrison*.[12]

## CONCLUSION

For the reasons set forth above, (1) Counts One, Two, and Six through Ten of the Complaint should be dismissed; and (2) Lead Plaintiffs MassPRIM and MissPERS should be removed. In the alternative, to the extent any of these Counts is not dismissed in its entirety, the Court should strike, as to that Count, any class allegations that are inconsistent with the decision in *Morrison*.[13]

---

[12] By agreement of the parties and with the consent of the Court, this memorandum of law does not address the impact of any dismissals under *Morrison* on RBS's pending motion to dismiss based on the *forum non conveniens* doctrine. *See* Letter of July 7, 2010 from Paul A. Engelmayer to Hon. Deborah A. Batts (endorsed July 8, 2010). As we have noted, any dismissals based on *Morrison* will affect the analysis of that motion. *See* RBS SMJ Reply Br. 2-3 ("The more purchasers whose claims are dismissed as improperly extraterritorial under *Morrison*, the more compelling the argument to dismiss this entire case *at its outset* under the doctrine of *forum non conveniens*, without the need to resolve any other motions."). The Court may wish, following a ruling on the motions to dismiss based on *Morrison*, to receive supplemental briefing from the parties as to how that ruling affects RBS's pending *forum non conveniens* motion.

[13] Because the Supreme Court's decision in *Morrison* has changed the applicable doctrine as to the extraterritorial reach of the securities laws so as to make clear that the claims of all purchasers of RBS ordinary shares—not merely foreign-cubed purchasers—must be dismissed, RBS is submitting herewith an Amended Notice of Motion seeking such broader relief.

Dated: July 20, 2010

Respectfully submitted,

<u>/s/ Paul A. Engelmayer</u>
Paul A. Engelmayer
Robert W. Trenchard
David S. Lesser
WILMER CUTLER PICKERING
  HALE AND DORR LLP
399 Park Avenue
New York, New York  10022
Telephone: 212-230-8800
Fax: 212-230-8888
paul.engelmayer@wilmerhale.com

Counsel for The Royal Bank of Scotland Group plc