UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| IN RE ROYAL BANK OF SCOTLAND GROUP PLC SECURITIES LITIGATION | : Civil Action No.: <u>09-CV-0300 (DAB)</u> <br> : <br> : <u>ECF CASE</u> |

**LEAD PLAINTIFFS MASSACHUSETTS PENSION RESERVES INVESTMENT MANAGEMENT BOARD AND MISSISSIPPI PUBLIC EMPLOYEES' RETIREMENT SYSTEM'S SUPPLEMENTAL MEMORANDUM OF LAW ADDRESSING THE IMPACT OF *MORRISON V. NATIONAL AUSTRALIA BANK LTD.***

## TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ................................................................................................ 1
ARGUMENT .................................................................................................................................. 2
I.   MORRISON DOES NOT BAR CLAIMS RELATING TO THE PURCHASE OF SECURITIES LISTED ON AN AMERICAN STOCK EXCHANGE ............................ 2
II.   MASSPRIM AND MISSPERS PURCHASED THEIR RBS ORDINARY SHARES IN THE UNITED STATES ............................................................................... 6
III.   MORRISON DOES NOT BAR CLAIMS BASED ON PURCHASES OF ADRS .......... 9
IV.   MORRISON DOES NOT APPLY TO SECURITIES ACT CLAIMS ........................... 10
CONCLUSION .............................................................................................................................. 11

# TABLE OF AUTHORITIES

Page(s)

**CASES**

*Anwar v. Fairfield Greenwich Ltd.*,
   No. 09-0118 (VM), 2010 U.S. Dist. LEXIS 86716 (S.D.N.Y. Aug. 18, 2010) ......................... 9

*Central Virginia Community College v. Katz*,
   546 U.S. 356 (2006) ............................................................................................................... 9

*Cooper Indus., Inc. v. Aviall Servs., Inc.*,
   543 U.S. 157 (2004) ............................................................................................................... 5

*Cornwell v. Credit Suisse Group*,
   No. 08-3758, 2010 U.S. Dist. LEXIS 76543 (S.D.N.Y. July 27, 2010) ............................... 5, 6

*Cornwell v. Credit Suisse Group*,
   No. 08-3758, 2010 U.S. Dist. LEXIS 83794 (S.D.N.Y. Aug. 11, 2010) ................................. 5

*Getter v. R. G. Dickinson & Co.*,
   366 F. Supp. 559 (S.D. Iowa 1973) ....................................................................................... 8

*Green v. Weis, Voisin, Cannon, Inc.*,
   479 F.2d 462 (7th Cir. 1973) ................................................................................................. 8

*In re Adelphia Commc'ns Corp. Sec. & Derivative Litig.*,
   398 F. Supp. 2d 244 (S.D.N.Y. 2005) ................................................................................... 8

*In re Metro. Secs. Litig.*,
   532 F. Supp. 2d 1260 (E.D. Wash. 2007) ............................................................................. 3

*Lee v. Kemna*,
   534 U.S. 362 (2002) ............................................................................................................... 8

*Morrison v. National Australia Bank*,
   130 S. Ct. 2869 (2010) .................................................................................................. passim

*N. Am. Philips Corp. v. Am. Vending Sales, Inc.*,
   35 F.3d 1576 (Fed. Cir. 1994) ............................................................................................... 7

*N.J. Carpenters Health Fund v. Residential Capital, LLC*,
   No. 08-8781, 2010 WL 1257528 (S.D.N.Y. Mar. 31, 2010) ................................................. 9

*Roby v. Corp. of Lloyd's*,
   996 F.2d 1353 (2d Cir. 1993) ................................................................................................ 9

*Shaw v. Dreyfus*,
    172 F.2d 140 (2d Cir. 1949)..................................................................................................7

*Velazquez v. Legal Servs. Corp.*,
    164 F.3d 757 (2d Cir. 1999)..................................................................................................9

**STATUTES AND REGULATIONS**

15 U.S.C. § 78j(b) ....................................................................................................................2, 4

17 C.F.R. § 230.902(h) .................................................................................................................7

17 C.F.R. § 230.903(a)(1) .............................................................................................................7

17 C.F.R. § 240.12d1-1(a) ............................................................................................................4

**OTHER AUTHORITIES**

Greene, et al., *U.S. Regulation of the International Securities and Derivatives Markets*
    (9th ed. 2009) ..................................................................................................................2, 4, 6

**PRELIMINARY STATEMENT**

Lead plaintiffs Massachusetts Pension Reserves Investment Management Board ("MassPRIM") and Mississippi Public Employees' Retirement System ("MissPERS" and together with MassPRIM, "Plaintiffs") submit this memorandum of law in response to Defendant The Royal Bank of Scotland Group Plc's ("RBS") memorandum ("RBS Br.") concerning the impact of the Supreme Court's recent decision in *Morrison v. National Australia Bank*, 130 S. Ct. 2869 (2010), on the federal securities claims asserted in this case.

In *Morrison*, the Supreme Court addressed "whether § 10(b) of the Securities Exchange Act of 1934 provides a cause of action to foreign plaintiffs suing foreign and American defendants for misconduct in connection with securities traded on foreign exchanges." *Id*. at 2875. The Court eliminated the "conduct" and "effects" tests that had governed securities cases with a transnational component and held that Section 10(b) covers "transactions in securities listed on domestic exchanges, and domestic transactions in other securities." *Id*. at 2884. Here, Plaintiffs claims are cognizable under either prong of this test. First, RBS's ordinary shares are listed on a domestic exchange – the NYSE – so Section 10(b) covers all claims based on purchases of those shares. *Morrison*'s plain language explicitly allows claims on behalf of purchasers of securities listed on American exchanges – wherever purchased. Second, Plaintiffs' transactions in RBS ordinary shares occurred in the U.S. as Plaintiffs are U.S. residents and significant aspects of the purchases occurred here. In addition, *Morrison* has no effect on the preferred shares claims, which arose out of domestic offerings, and RBS does not argue otherwise. For these and other reasons set forth below, *Morrison* does not warrant the dismissal of any of Plaintiffs' claims.

**ARGUMENT**

I. *MORRISON* **DOES NOT BAR CLAIMS RELATING TO THE PURCHASE OF SECURITIES LISTED ON AN AMERICAN STOCK EXCHANGE**

The *Morrison* majority held that Section 10(b) covers both "the purchase or sale of a security listed on an American stock exchange, and the purchase or sale of any other security in the United States." 130 S. Ct. at 2888. Under the plain language of the Court's holding, if a security is listed on an American stock exchange, Section 10(b) applies, regardless of whether the security is purchased in the U.S. or through the American exchange. Critically, the Court did *not* say that, for Section 10(b) to apply, the security *listed* on an American exchange must have been *purchased* or *traded* on that exchange; rather, the listing itself provides the U.S.-nexus requiring the application of Section 10(b). The Court's conclusion follows naturally from the text of Section 10(b), which prohibits, *inter alia*, deceptive conduct "in connection with the purchase or sale of any security *registered* on a national securities exchange[.]" 15 U.S.C. § 78j(b) (emphasis added).

Here, it is beyond dispute that RBS's ordinary shares were listed and registered on the NYSE. In October 2007, RBS listed and registered American Depository Shares (as evidenced by American Depository Receipts "ADR") on the NYSE.[1] In doing so, RBS also listed and registered its ordinary shares on the NYSE – the same shares that Plaintiffs purchased. Specifically, on July 20, 2007, RBS filed a registration statement with the SEC registering its

---

[1] ADRs are defined as follows:

> ADRs are negotiable certificates, issued in registered form, and evidence an interest in segregated securities of a foreign issuer. ADRs are usually issued by a U.S. commercial bank (the "Depository") with whose foreign correspondent (the "Custodian") the underlying shares have been deposited. An ADR holder generally can exchange ADRs for the underlying shares at any time, and similarly, additional shares generally can be deposited against issuance of additional ADRs.

Greene, et al., U.S. Regulation of the International Securities & Derivatives Markets § 2.02[1] at 2-19 (9th ed. 2009) (hereinafter, "Greene") (excerpts attached as Ex. A to the accompanying Declaration of Steven J. Toll ("Toll Decl.")).

2

ordinary shares. *See* Toll Decl., Ex. B. Then, by Form 8-A dated October 4, 2007, RBS registered on the NYSE, pursuant to Section 12(b) or 12(g) of the Exchange Act, both American Depository Shares ("each representing one ordinary share, nominal value £0.25 each") *and* RBS ordinary shares, nominal value £0.25 each. *See* Toll Decl., Ex. C at 1. The Form 8-A expressly stated that the application was made "for *listing*, not trading, but only in connection with the registration of American Depository Shares pursuant to the requirements of the Securities and Exchange Commission." *Id*. (emphasis added). Thus, RBS's common stock was listed on an American stock exchange, which under *Morrison* renders this case subject to Section 10(b).[2]

In its Supplemental Brief, RBS ignores the plain language of the *Morrison* holding – which requires only *listing* on an American exchange for application of Section 10(b) – and instead assumes an entirely new requirement that the security must also be *traded* on an American exchange. *See* RBS Br. at 5-6 (arguing that RBS ordinary shares fall outside the scope of Section 10(b) because the complaint alleges they are "traded" on foreign exchanges); *id*. at 6 (arguing that "[u]nder *Morrison*, *trades* on the NYSE fall within the territorial ambit of the Exchange Act.") (emphasis added). RBS's assumption finds no support in *Morrison*. Again, the clear language of *Morrison* is that Section 10(b) applies, *inter alia*, to "transactions in securities listed on domestic exchanges[.]" *Morrison*, 130 S. Ct. at 2884. There simply is no additional requirement that those securities be actively traded on the domestic exchange. Indeed, in related contexts, courts have squarely rejected the argument that a security must be traded in order to be considered "listed" on an exchange. *See, e.g.*, *In re Metro. Secs. Litig.*, 532 F. Supp. 2d 1260, 1298-99 (E.D. Wash. 2007) (rejecting argument "that a security must actually be traded on a

---

[2] In addition to registration with the SEC, RBS also was required to file an application with the NYSE to list its ordinary shares. That application is not publically available.

national exchange, rather than merely listed" in order to be considered "listed" under Section 18(b) of the Securities Act).

Registration and listing of securities is sufficient to invoke Section 10(b) because doing so places those securities within the regulatory authority of the SEC and the federal securities laws. Section 10(b) by its terms applies to securities "registered" on a national securities exchange. 15 U.S.C. § 78j(b) (prohibiting, *inter alia*, deceptive conduct "in connection with the purchase or sale of any security registered on a national securities exchange"); *Morrison*, 130 S. Ct. at 2884-85 ("The Act's registration requirements apply only to securities listed on national securities exchanges."). When RBS registered and listed its ordinary shares on the NYSE, it subjected those shares to U.S. regulation and to Section 10(b). *See* Greene, § 2.03 at 2-27 ("A foreign company that lists securities on a U.S. exchange is treated as having voluntarily entered the U.S. markets and must register under the Exchange Act the class of securities to be listed."). Moreover, under the SEC's rules, registration of any security on a national exchange registers the entire class of that security – regardless of where else the shares may trade. 17 C.F.R. § 240.12d1-1(a). Thus, securities listed on American exchanges are subject to Section 10(b), no matter where the purchase or sale took place.[3]

Defendants may argue against this straightforward reading of *Morrison* because National Australia Bank – the issuer in *Morrison* – also had ADRs traded on the NYSE. However, the Supreme Court made clear that because the claims relating to the ADRs had previously been dismissed (and that dismissal had not been challenged on appeal), it did not consider those ADRs in its analysis. 130 S. Ct. at 2876 n.1. In fact, the plaintiffs in *Morrison* did not argue in their

---

[3] To the extent that there is any difference between the concepts of "registration" and "listing," those differences played no role in *Morrison* as the Supreme Court treated the concepts interchangeably. *See Morrison*, 130 S. Ct. at 2884-85 (explaining that the Exchange Act applies to securities registered on a domestic exchange and that the "registration requirements apply only to securities listed" on such exchanges).

briefs before the Supreme Court that National Australia Bank's ordinary shares were listed on a domestic exchange so that issue was not before the Court. *See generally Morrison v. National Australia Bank, Ltd.*, Initial Brief of Appellant-Petitioner, 2010 U.S. S. Ct. Briefs LEXIS 35 (U.S. Jan. 19, 2010); *Morrison v. National Australia Bank, Ltd.*, Reply Brief of Appellant-Petitioner, 2010 U.S. S. Ct. Briefs LEXIS 240 (U.S. March 19, 2010). The *Morrison* Court accordingly did not consider, much less decide, the issue of whether those ADRs rendered National Australia Bank's common stock "listed on an American exchange" for purposes of Section 10(b). Therefore, National Australia Bank's ADR program should play no role in this Court's interpretation of *Morrison*. *See Cooper Indus., Inc. v. Aviall Servs., Inc.*, 543 U.S. 157, 170 (2004) ("Questions which merely lurk in the record, neither brought to the attention of the court nor ruled upon, are not to be considered as having been so decided as to constitute precedents.").[4]

Defendants may also argue that applying Section 10(b) to companies who list their ordinary shares this way would undermine the holding in *Morrison*. However, it is only a very small minority of foreign public companies that participate in an ADR program in the U.S. For example, only 22 British companies list ADRs on the NYSE and only four list ADRs on NASDAQ, whereas there are nearly 1,900 British companies that list stock on the London Stock Exchange.[5] Before *Morrison*, any foreign public company potentially could be sued under Section 10(b). But now, only those few companies, like RBS, that have chosen to list their

---

[4] Similarly, this question was not at issue in the recent district court decisions on *Morrison*, such as *Cornwell v. Credit Suisse Group*, No. 08-3758, 2010 U.S. Dist. LEXIS 76543 (S.D.N.Y. July 27, 2010). *See Cornwell v. Credit Suisse Group*, No. 08-3758, 2010 U.S. Dist. LEXIS 83794, at *7 (S.D.N.Y. Aug. 11, 2010) (denying motion for reconsideration where plaintiffs had not previously raised the argument that "because CSG securities are listed on the New York Stock Exchange, purchases of CSG securities on [a foreign exchange] are indistinguishable from those that occurred on domestic exchanges").

[5] These figures are drawn from the websites for the NYSE (http://www.nyse.com/about/listed/lc_ny_region_6.html?country=294), NASDAQ (http://www.nasdaq.com/asp/nonUSoutput.asp?page=U&previousCount=0&region=), and London Stock Exchange (http://www.londonstockexchange.com/statistics/companies-and-issuers/companies-and-issuers.htm).

shares on a domestic exchange (as well as those who sell securities domestically, as discussed below) fall within Section 10(b)'s reach.[6]

Because RBS's ordinary shares are listed on the NYSE, Plaintiffs may maintain Section 10(b) claims on behalf of all purchasers of those shares.[7]

## II. MASSPRIM AND MISSPERS PURCHASED THEIR RBS ORDINARY SHARES IN THE UNITED STATES

Section 10(b) is applicable to the claims based on ordinary shares for the additional reason that the purchases of RBS ordinary shares by MassPRIM and MissPERS occurred in the United States. *See Morrison*, 130 S.Ct. at 2886 (holding that Section 10(b) applies when "the purchase or sale is made in the United States"). Under *Morrison*, Section 10(b) applies to purchases of securities from a foreign exchange so long as the purchase occurs within the United States. *Id*. at 2885 ("With regard to securities *not* registered on domestic exchanges, the exclusive focus [is] on domestic purchases and sales[.]").[8]

Unlike the situation in *Morrison* where the plaintiffs were "all Australians" and "all aspects of the purchases . . . took place outside the United States," *id*. at 2876, 2888, here the purchases occurred within the United States, for the following reasons. First, Plaintiffs'

---

[6] Section 10(b) does not even reach the ordinary shares of every company that participates in an ADR program in the U.S. because only certain ADR programs require the issuer to register and list its ordinary shares. *See* Greene*,* § 2.02 at 2-18, § 2.02[3] at 2-23.

[7] If the Court deems it necessary, Plaintiffs are prepared to amend the Complaint to include allegations that RBS's ordinary shares are listed on the NYSE. The Complaint did not include those allegations because the law did not require them at the time the Complaint was filed.

[8] The recent ruling in *Credit Suisse,* 2010 U.S. Dist. LEXIS 76543 at *10, that Section 10(b) cannot apply to transactions involving a purchase of securities listed only on a foreign exchange is in conflict with *Morrison*. Nothing in *Morrison* suggests that registration on another nation's securities exchanges provides immunity to a suit based on a domestic purchase. Indeed, in *Morrison* itself, the fact that National Australia Bank's ordinary shares were listed on foreign exchanges was insufficient to foreclose liability. That liability could have been based on a domestic transaction is reflected in the conclusion to the Court's opinion, stating: "Section 10(b) reaches the use of a manipulative or deceptive device or contrivance only in connection with the purchase or sale of a security listed on an American stock exchange, *and the purchase or sale of any other security in the United States*. This case involves no securities listed on a domestic exchange, and *all aspects of the purchases complained of by those petitioners who still have live claims occurred outside the United States*." *Morrison*, 130 S. Ct. at 2888 (emphasis added).

residence in the U.S. is sufficient to establish that their purchases occurred here.  *Morrison* held that Section 10(b) applies to "domestic transactions in . . . securities."  *Id.* at 2884.  The phrase "domestic transactions" is properly read to encompass those in which one party to the transaction resides in the United States (even if a foreign exchange is used for part of the transaction).  In fact, the very regulation upon which the *Morrison* majority relied to support its conclusion that Section 10(b) does not apply to "'sales that occur outside the United States,'" *see* 130 S. Ct. at 2885 (citing 17 C.F.R. § 230.901), goes on to define those "offshore transaction[s]" as *excluding* sales "made to a person in the United States."  17 C.F.R. §§ 230.902(h), .903(a)(1).  Therefore, under the regulation cited by *Morrison*, sales made to persons within the United States are considered domestic transactions.  In other contexts, courts considering the issue of where a sale took place have similarly interpreted the definition of "sale" broadly to include the location of the buyer.  *See, e.g.*, *N. Am. Philips Corp. v. Am. Vending Sales, Inc.*, 35 F.3d 1576, 1579 (Fed. Cir. 1994) (interpreting federal patent statute and stating "it is possible to define the situs of the . . . sale . . . as including the location of the seller and the buyer and perhaps the points along the shipment route in between[.]").

Not only are MassPRIM and MissPERS indisputably resident in the United States, but each is prepared to demonstrate that their decisions to purchase many of their RBS ordinary shares were made in the United States, based on the direction of their United States-based asset managers.  These acts are sufficient to establish the purchases and sales as U.S. transactions.  Plaintiffs' purchases of RBS ordinary shares occurred in the U.S. because Plaintiffs made the decision to purchase here and because they entered into contracts to acquire the shares here.  *See Shaw v. Dreyfus*, 172 F.2d 140, 142 (2d Cir. 1949) ("The generally understood meaning of 'purchase' is to acquire something *by one's own act or agreement* for a price.") (emphasis

7

added); *In re Adelphia Commc'ns Corp. Sec. & Deriv. Litig.*, 398 F. Supp. 2d 244, 260 (S.D.N.Y. 2005) (because Section 10(b) "seeks to ensure that investors make decisions based on honest information," a "purchase" under Section 10(b) occurs when an investor makes an investment decision). In fact, multiple courts have interpreted state securities statutes in precisely this way. *See, e.g., Green v. Weis, Voisin, Cannon, Inc.*, 479 F.2d 462, 464-65 (7th Cir. 1973) (holding that under Illinois Securities Act, sales occurred in Illinois when defendants solicited sales from Illinois residents, even though sales were consummated in New York); *Getter v. R. G. Dickinson & Co.*, 366 F. Supp. 559, 572-73 (S.D. Iowa 1973) (holding that under Iowa Securities Act, sales of securities occurred in Iowa where plaintiffs were Iowa residents and signed purchase agreements in Iowa, even though sales were consummated in New York).

RBS argues that, after *Morrison*, it "no longer matters" that "purchasers may be citizens or residents of the United States." RBS Br. at 2. However, that argument misconstrues the *Morrison* holding. *Morrison* held that Section 10(b) applies when "the purchase or sale is made in the United States." 130 S.Ct. at 2886. And as discussed above, the purchases of a U.S. resident occur in the U.S. as a matter of law.[9] Indeed, *Morrison* could not have held as RBS argues because the case did not involve any domestic purchasers. Rather, before the Court in *Morrison* were only foreign purchasers of foreign securities on foreign exchanges. 130 S. Ct. at 2875 ("We decide whether § 10(b) of the Securities Exchange Act of 1934 provides a cause of

---

[9] Justice Stevens, in his separate opinion, correctly pointed out the absurdity of holding the United States securities laws unavailable to United States investors (while incorrectly assuming that the majority had reached that issue). *See* 130 S. Ct. at 2895 (Stevens, J., concurring). In any event, Justice Stevens was *dissenting* from the majority's analysis at that point, and dissents regularly exaggerate the scope of the majority opinion to point out its perceived absurdities. It is well settled that "Cassandra-like predictions in dissent are not a sure guide to the breadth of the majority's ruling." *Lee v. Kemna*, 534 U.S. 362, 387 (2002) (internal quotation marks omitted); *African Trade & Info. Ctr. v. Abromaitis*, 294 F.3d 355, 362 (2d Cir. 2002).

8

action to *foreign plaintiffs* suing foreign and American defendants for misconduct in connection with securities traded on foreign exchanges.").[10]

Accordingly, the Court should hold that Plaintiffs' transactions in RBS ordinary shares occurred in the U.S. or permit Plaintiffs to amend the Complaint to allege facts demonstrating that the transactions occurred here. At the very least, the determination of the situs of the transactions should await further factual development. *See Anwar v. Fairfield Greenwich Ltd.*, No. 09-0118 (VM), 2010 U.S. Dist. LEXIS 86716, at *70-71 (S.D.N.Y. Aug. 18, 2010) (deferring ruling on application of *Morrison* because "a more developed factual record is necessary to inform a proper interpretation as to whether Plaintiffs' purchases . . . occurred in the United States").

### III.   *MORRISON* DOES NOT BAR CLAIMS BASED ON PURCHASES OF ADRS

RBS concedes, as it must, that there is no issue, after *Morrison*, as to the application of the federal securities laws to ADRs. Therefore, if the Court permits MassPRIM and MissPERS to pursue claims based on their purchases of ordinary shares, MassPRIM and MissPERS may also represent purchasers of ADRs. None of the cases cited by RBS on this point are relevant as each involved claims under the Securities Act alleging false statements within registration statements, not claims under the Exchange Act as here. For example, in *N.J. Carpenters Health Fund v. Residential Capital, LLC*, No. 08-8781, 2010 WL 1257528 (S.D.N.Y. Mar. 31, 2010), the lead plaintiffs had purchased securities through a subset of the stock offerings on which they

---

[10] To the extent that any language in *Morrison* suggests a holding beyond the scope of facts before the Court, "[i]t is a maxim not to be disregarded, that general expressions, in every opinion, are to be taken in connection with the case in which those expressions were used." *Cent. Va. Cmty. Coll. v. Katz*, 546 U.S. 356, 363 (2006) (quoting *Cohens v. Va.*, 19 U.S. 264, 399-400 (1821) (Marshall, C.J.)); *Velazquez v. Legal Servs. Corp.*, 164 F.3d 757, 770-71 (2d Cir. 1999), *aff'd*, 531 U.S. 533 (2001). *Morrison* involved only foreign, and not any American, investors. The courts have long recognized Section 10(b)'s importance in protecting American investors. *See, e.g., Roby v. Corp. of Lloyd's*, 996 F.2d 1353, 1364 (2d Cir. 1993) ("the securities laws are aimed at prospectively protecting American investors from injury by demanding 'full and fair' disclosure from issuers" and "deter[ring] issuers from exploiting American investors"). This Court should not read generalized language in *Morrison* as overruling the long line of established precedent holding Section 10(b) available to all American investors.

9

were suing. The Court held that the lead plaintiffs did not have standing to challenge statements in an offering that it did not purchase from because each offering contained different types of false statements. *Id*. at *4. In contrast, here, claims based on purchases of ordinary shares and claims based on purchases of ADRs are premised on exactly the same false and misleading statements. Moreover, unlike shares purchased in different offerings pursuant to different prospectuses and/or public statements (as in the cases cited by RBS), ADRs are directly tied to the underlying ordinary share, providing the holder of such instrument the right to exchange ADRs for the underlying ordinary shares at any time. *See supra* n.1.

## IV. *MORRISON* DOES NOT APPLY TO SECURITIES ACT CLAIMS

In addition to their claims under Section 10(b) of the Exchange Act, MassPRIM and MissPERS also assert claims under Sections 12(a)(2) and 15 of the Securities Act. Consolidated Compl. ¶¶ 642-723, Dkt. No. 75, July 15, 2009. The Securities Act was not before the Supreme Court in *Morrison*, and the Court issued no holdings as to that statute, leaving prior law undisturbed.

The principal Securities Act provision at issue here is Section 12. Section 12 imposes liability for misstatements in prospectuses. The violation occurs when the prospectus is put into the hands of an investor. As Judge Friendly held in *Bersch v. Drexel Firestone, Inc.*, while a fraudulent prospectus prepared abroad is not subject to Section 12 insofar as it was distributed to foreign investors, it *is* subject to Section 12 when it was distributed to *American* investors. 519 F.2d 974, 991-92 (2d Cir. 1975).

The application of Securities Act provisions such as Section 12 to this case is particularly appropriate, as RBS common stock was marketed to United States investors and decisions to invest in RBS common stock were made in the United States based on the direction of United States based asset-managers (*see supra* at 7). RBS's attempts to show that the Exchange Offer

10

and Rights Issues transactions occurred outside the United States are merely mechanical.[11] Accordingly, the Securities Act applies.[12]

Even if the Court determines that the *Morrison* decision changed the application of the Securities Act, Plaintiffs claims would still be cognizable for the reasons expressed above with regard to the Exchange Act claims. Plaintiffs may maintain the Securities Act claims because RBS's ordinary shares are traded on a domestic exchange and because the shares at issue were purchased in the U.S.

Finally, RBS does not contend that *Morrison* requires the dismissal of claims arising out of purchases of RBS's preferred shares, nor could it. The preferred share claims (Counts III, IV, and V) were based on domestic securities offerings and therefore remain fully cognizable after *Morrison*.[13]

## CONCLUSION

For the foregoing reasons, *Morrison* does not require the dismissal of any of MassPRIM's and MissPERS's claims.

---

[11] As to the Exchange Offer, all RBS can argue is that the common stock sales were settled by means of a U.K. or Netherlands settlement system; RBS does not deny that the Exchange Offer was marketed and offered to investors in the United States or that such investors decided to participate and executed necessary documents here. As to the Rights Offer, RBS concedes that the Prospectus was given to United States investors.

[12] RBS argues that Plaintiff's claim based on the Rights Issue must be dismissed because a forum selection clause allegedly granted exclusive jurisdiction in UK courts. Plaintiffs previously addressed this argument in their Memorandum of Law in Opposition to the Motion by RBS to Dismiss for Lack of Subject Matter Jurisdiction and under the *Forum Non Conveniens* Doctrine at 17-19.

[13] The Court previously appointed the Freeman Group as Lead Plaintiff for the preferred share claims. *See* Op. at 10, Dkt. No. 57, May 5, 2009. However, MassPRIM and MissPERS are the only named plaintiffs that purchased Series U shares.

Dated: New York, New York
September 8, 2010

| | |
|---|---|
| **LABATON SUCHAROW LLP**<br><br>　*/s/ Thomas A. Dubbs*<br>Thomas A. Dubbs<br>Louis Gottlieb<br>Thomas G. Hoffman, Jr.<br>Barry Michael Okun<br>140 Broadway<br>New York, New York 10005<br>Telephone: (212) 907-0700<br>Facsimile: (212) 818-0477<br><br>**WOLF POPPER LLP**<br><br>　*/s/ Lester L. Levy*<br>Lester L. Levy<br>James A. Harrod<br>Sheryl H. Altwerger<br>Joshua W. Ruthizer<br>E. Elizabeth Robinson<br>845 Third Avenue<br>New York, New York 10022<br>Telephone: (212) 759-4600<br>Facsimile: (212) 486-2093<br><br>*Attorneys for Mississippi Public Employees' Retirement System and Co-Lead Counsel for the Class* | **COHEN MILSTEIN SELLERS & TOLL PLLC**<br><br>　*/s/ Steven J. Toll*<br>Steven J. Toll<br>Julie G. Reiser<br>Matthew K. Handley<br>1100 New York Avenue, N.W.<br>West Tower, Suite 500<br>Washington, DC 20005-3964<br>Telephone: (202) 408-4600<br>Facsimile: (202) 408-4699<br>　　- and -<br>Catherine A. Torell<br>150 East 52nd Street, Thirtieth Floor<br>New York, New York 10022<br>Telephone: (212) 838-7797<br>Facsimile: (212) 838-7745<br><br>*Attorneys for Massachusetts Pension Reserves Investment Management Board and Co-Lead Counsel for the Class* |

12

## **CERTIFICATE OF SERVICE**

I hereby certify that on September 8, 2010, I caused the foregoing to be electronically filed with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses of all counsel of record in this action.

*/s/ Steven J. Toll*
Steven J. Toll
