**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------- X
                              :   Electronically Filed
IN RE ROYAL BANK OF SCOTLAND    :
GROUP PLC SECURITIES LITIGATION   :   09 Civ. 300 (DAB)
-------------------------------------------------------- X

**MEMORANDUM IN SUPPORT OF IRVING FIREMEN'S MOTION TO INTERVENE**
**AND FOR FURTHER RELIEF**

## <u>TABLE OF CONTENTS</u>

I.      INTRODUCTION ...................................................................................................1

II.     BACKGROUND ....................................................................................................3

III.    ARGUMENT ........................................................................................................5

        A.      This Court Should Allow Irving Firemen to Intervene.............................5

                1.      Irving Firemen May Intervene as a Matter of Right ....................6

                2.      This Court Should Permit Irving Firemen to Intervene ...............8

                3.      Irving Firemen Should be Substituted as Lead Plaintiff............11

                4.      The Court Should Approve Irving Firemen's Choice of Counsel ............12

        B.      The Court Should Partially Reconsider its Dismissal Order and Deny
                Defendants' Motion to Dismiss the Common ADS Purchaser Claims ................ 13

IV.     CONCLUSION....................................................................................................16

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Atlantic States Legal Foundation, Inc. v. Karg Bros., Inc.*,
   841 F.Supp. 51 (N.D.N.Y. 1993) ........................................................13

*Foman v. Davis*,
   371 U.S. 178, 83 S.Ct. 227 (1962) ......................................................14

*Haddock v. Nationwide Fin. Servs., Inc.*,
   262 F.R.D. 97 (D.Conn. 2009) ...........................................................7

*Hevesi v. Citigroup Inc.*,
   366 F.3d 70 (2d Cir. 2004) ...............................................................11

*In re Bank of America Corp. Auction Rate Sec. (ARS) Mktg. Litig.*,
   No. MDL 09-02014, 2009 WL 2031764 (N.D. Cal. July 9, 2009) ......................11

*In re: Bank of New York Deriv. Litig.*,
   320 F.3d 291 (2d Cir. 2003) .............................................................9

*In re Calif. Micro Devices Sec. Litig.*,
   168 F.R.D. 276 (N.D. Cal. 1996) ........................................................10

*In re Enron Corp. Sec., Deriv. & ERISA Litig.*,
   No. MDL-1446, 2004 WL 405886 .......................................................5, 7

*In re Ethylene Propylene Diene Monomer (EPDM) Antitrust Litig.*,
   255 F.R.D. 308 (D.Conn. 2009) ......................................................8, 9, 10

*In re IMAX Sec. Litig.*,
   Master File No. 06-Civ-6128(NRB), 2009 WL 1905033 (S.D.N.Y. June 29, 2009) .............11

*In re Impax Labs, Inc. Sec. Litig.*,
   No. C 04-04802, 2008 WL 1766943 (N.D. Cal. April 17, 2008) ..........................12

*In re NYSE Specialists Sec. Litig.*,
   240 F.R.D. 128 (S.D.N.Y. 2007) .........................................................12

*In re Portal Software, Inc. Sec. Litig.*,
   No. C-03-5138 VRW, 2005 U.S. Dist. LEXIS 41178 (N.D. Cal. Mar. 9, 2005) .................11

*In re SLM Corp. Sec. Litig.*,
   258 F.R.D. 112 (S.D.N.Y. 2009) .........................................................11

*Legal Aid Soc'y of Alameda Co. v. Dunlop*,
  618 F.2d 48 (9th Cir. 1980) .................................................................6

*McCausland v. S'holders Mgmt. Co.*,
  52 F.R.D. 521 (S.D.N.Y. 1971) ..........................................................10

*McCullagh v. Merrill Lynch & Co.*,
  No. 01 Civ. 7322 DAB, 2004 WL 744484 (S.D.N.Y. April 7, 2004) ....................15

*Morin v. Trupin*,
  823 F.Supp. 201 (S.D.N.Y. 1993)........................................................14

*Morrison v. National Australia Bank Ltd*,
  130 S.Ct. 2869 (2010) ............................................................ *passim*

*Mullen v. Bevona*,
  No. 95 CIV. 5838(PKL), 1998 WL 148426 (S.D.N.Y. March 27, 1998) ...............16

*New York University v. Ariel Fund Limited*,
  No. 603803/08, Opinion (New York State Supreme Court, New York County, Feb.
  22, 2010) ..........................................................................13

*Parks v. Ford*,
  68 F.R.D. 305 (E.D. Pa. 1975)..........................................................16

*Provident Bank v. Cmty. Home Mortg. Corp.*,
  No. 02-CV-5219, 2005 WL 1801654 (E.D.N.Y. July 28, 2005)....................6, 7, 8

*Swan v. Stoneman*,
  635 F.2d 97, (2d Cir. 1980)...............................................................6

*Travelers Ins. Co. v. Buffalo Reins. Co.*,
  739 F.Supp. 209 (S.D.N.Y. 1990)........................................................14

*Trief v. Dun & Bradstreet Corp.*,
  144 F.R.D. 193 (S.D.N.Y. 1992) ........................................................10

*U.S. v. Pitney Bowes, Inc.*,
  25 F.3d 66 (2d Cir. 1994) .................................................................6

*U.S. v. State of New York*,
  820 F.2d 554 (2d Cir. 1987)..............................................................6

*United Airlines, Inc. v. McDonald*,
  432 U.S. 385 (1977)......................................................................6

*United States Steel Corp. v. Multistate Tax Comm'n*,
  No. 72 Civ. 3438 (CHT), 1974 WL 172930 (S.D.N.Y. Feb. 5, 1974) ..................10

**STATUTES, RULES AND REGULATIONS**

28 U.S.C.
   §1331(a) ..................................................................................................................10

Federal Rules of Civil Procedure
   Rule 15(a)..........................................................................................................1, 14, 15
   Rule 23(d)(2)...............................................................................................................5
   Rule 24(a)(2) ...............................................................................................................8
   Rule 24(b) ................................................................................................................8, 9
   Rule 59(e) ......................................................................................................... *passim*

**OTHER AUTHORITIES**

3B MOORE'S FEDERAL PRACTICE 24.13(1) (1980) ..............................................................6

3 Herbert, Newberg & Alba Conta, NEWBERG ON CLASS ACTIONS §16.08.09 (3d ed. 1992) ......................................................................................................................10

11 Wright & Miller, FEDERAL PRACTICE AND PROCEDURE §2810.1 (1995) ........................... 13-14

7C C.A. Wright, A.R. Miller & M.K. Kane, FEDERAL PRACTICE AND PROCEDURE CIVIL 2d §1917 (1990)..........................................................................................................10

## I.      INTRODUCTION

Movant and proposed intervenor plaintiff Irving Firemen's Relief and Retirement Fund ("Irving Firemen") is a member of the putative class of purchasers of the American Depository Receipts ("ADR"s) for common shares ("Common ADS") of the Royal Bank of Scotland Group plc ("RBS" or the "Company") listed and traded on the New York Stock Exchange between October 17, 2007 and January 19, 2009 (the "Class Period") in this consolidated federal securities action currently pending against RBS and certain of its senior executives.  Irving Firemen hereby moves pursuant to Federal Rules of Civil Procedure ("Rule") 23 and 24 to intervene individually and on behalf of a class of purchasers of Common ADS and to be substituted as a lead plaintiff for these purchasers in the place and stead of the Massachusetts Pension Reserves Investment Management Board ("MassPRIM") and the Public Employees' Retirement System of Mississippi ("MissPERS").  Irving Firemen also requests that its selection of Scott+Scott LLP as counsel for the putative class of Common ADS purchasers be approved. Because the Court's January 11, 2011 Memorandum and Order dismissed the Class Period claims of the Common ADS purchasers *only* because MassPERS and MissPERS lacked standing to proceed on those claims (*see* ECF No. 157, the "Dismissal Order"), Irving Firemen also moves for reconsideration of the Dismissal Order as it pertains to these claims pursuant to Rules 15(a), 59(e) and Local Rule 6.3.[1]  Finally, in the event Irving Firemen's motion to intervene is adopted, Irving Firemen requests leave to file an amended Complaint in Intervention within 45 days of being granted leave to intervene.

The Court should permit Irving Firemen to intervene to assert claims under the Exchange Act on behalf of the purchasers of Common ADS because Irving Firemen is an appropriate

---

[1]      As §II.B.1 of the Court's Individual Practice rules provide, a "pre-motion conference with the Court is [not] required before making … motions that are required by the Federal Rules of Civil or Appellate Procedure to be made by a certain time," and specifically, "[m]otions made … for relief from judgment/new trial/reconsideration, do not require a pre-motion conference." Nonetheless, Irving Fire did seek a pre-motion conference prior to filing this motion which also seeks intervention and substitution of lead plaintiff.  However, to ensure timeliness of the motion for reconsideration, Irving Fire is filing this motion now.

plaintiff to pursue these claims which may otherwise be unfairly prejudiced by their dismissal from this action, and because judicial economy will be furthered by litigating these claims with the remaining claims brought by purchasers of RBS ADR's for preferred shares (the "Preferred ADS").[2]   In the Dismissal Order, the Court dismissed all claims except those brought on behalf of purchasers of the Preferred ADS, after finding that *Morrison v. National Australia Bank Ltd,* 130 S.Ct. 2869 (2010) deprived purchasers of RBS's securities ***on foreign exchanges*** of standing to prosecute federal securities claims under §§10(b) and 20(a) of the Securities Exchange Act of 1934 ("Exchange Act"), and thus deprived the Court-appointed co-lead plaintiffs – MassPRIM and MissPERS, who only purchased RBS ordinary shares on foreign exchanges – of standing to proceed on ***any*** common share purchaser claims. *See* Dismissal Order at 3, 27.

While the Court expressly recognized that the Consolidated Complaint "asserts Exchange Act claims encompassing purchasers of [ADRs], which trade on the New York Stock Exchange," and that even "Defendants admit that under *Morrison*, trades on the NYSE fall within the territorial ambit of the Exchange Act," the Court nonetheless dismissed the RBS Common ADS purchaser claims ***on the sole basis that no remaining plaintiff had standing to prosecute those claims.*** *See* Dismissal Order at 21-22 ("case law supports dismissal on these ADR claims where Plaintiffs are not purchasers").

As MissPERS has now expressly acknowledged in its own motion for reconsideration of the Dismissal Order filed January 25, 2011 that it does not intend to seek reconsideration of that portion of the Dismissal Order granting defendants' motion to dismiss the RBS Common ADS claims (and the Court has found both MassPRIM and MissPERS lack standing to do so), Irving Firemen should be permitted to intervene to preserve these claims on behalf of the class of

---

[2]   Irving Fire purchased Common ADS on the NYSE during the Class Period and suffered losses on those purchases as reflected in its Certification and Loss Chart, attached hereto as Exhibit A to the Declaration of Beth A. Kaswan in Support of Irving Firemen's Motion to Intervene and for Further Relief (the "Kaswan Decl."). All "Ex. __" references are to the Kaswan Decl.

Common ADS purchasers and be appointed lead plaintiff to pursue these claims in this case. If Irving Firemen's motion to intervene is granted, the Court can and should reconsider that portion of the Dismissal Order that dismissed those claims and deny defendants' request to dismiss those claims on grounds of standing.

For all of these reasons and those detailed below, this Court should enter an order, (1) granting Irving Firemen's motion to intervene; (2) substituting Irving Firemen as lead plaintiff to pursue the claims of Common ADS purchasers; (3) appointing Scott+Scott LLP as lead counsel for these claims; (4) reconsidering its dismissal of the Common ADS claims for lack of standing; and (5) setting a schedule for Irving Firemen to amend its Complaint in Intervention (the "Amended Complaint") and for additional motions on that Amended Complaint.

## II.  BACKGROUND

As alleged in the Consolidated Complaint filed on July 15, 2009, during the height of the United States real estate bubble, RBS undertook a rapid expansion of its real estate mortgage investment portfolio, all the while concealing from the investment community that this rapid expansion was due in large part to ever-increasing exposure to the U.S. subprime mortgage market. [3] ¶¶3-18, 125-219.  RBS also issued materially false and misleading statements in the United States throughout the Class Period, concealing its balance sheet exposure to the U.S. subprime mortgage market and to other large corporate transactions.  *See* ¶¶273-356.

Meanwhile, RBS's acquisition of a 38% interest in ABN AMRO in October 2007 was "partially funded through [an] Exchange Offer, in which approximately 530.6 million RBS ordinary shares were offered to ABN AMRO shareholders in exchange for their ABN AMRO ordinary or American Depositary Shares" and then "listed on the NYSE" by RBS. ¶¶ 54-55.

Finally, "on January 19, 2009, RBS admitted that, due to the volume of subprime exposure the Company had taken on between 2005 and 2008 and the failure of [its] ABN AMRO acquisition to yield any of the benefits previously touted by RBS, it would report a loss of £28

---

[3]    *See* ECF No. 75.  All "¶_" references are to the Consolidated Complaint.

billion ($41.3 billion) for 2008, the largest in British corporate history." ¶19.  On this news, the price of RBS's ADRs, which like the RBS ordinary shares they represent had traded at levels artificially inflated by defendants' misstatements, plummeted and RBS's common stock "lost more than 65% of [its] value." *Id.*; *see also* ¶¶220-27, 260.

In January 2009, the first of ten securities class actions were commenced on behalf of those who purchased or otherwise acquired RBS securities between 2006 and 2009, all of which were consolidated on May 5, 2009. *See* LP Order at 1-2.  MassPRIM and MissPERS were appointed "co-Lead Plaintiffs" of the putative class of ***all*** purchasers of RBS ordinary shares between June 2007 and January 2009 (the "Common Share Group") and the Freeman Group was appointed "co-Lead Plaintiffs" "of the putative class of Plaintiffs who purchased preferred shares in Defendant RBS" (the "Preferred Share Group").[4]  LP Order at 8-10.  MassPRIM's and MissPERS' "selection of Cohen Milstein Sellers & Toll PLLC, Labaton Sucharow LLP, and Wolf Popper LLP to serve as Co-Lead Counsel [was also] APPROVED for the Common Share Group" and the "Freeman Group's selection of Girard Gibbs LLP as Lead Counsel [was also] APPROVED for the Preferred Share Group." *Id.* at 11.  However, the Court's LP Order expressly stated that ***the "Court may re-consider the decision to appoint co-Lead Plaintiffs at a later time.*** *Id.* at 10-11.

The Consolidated Complaint filed July 15, 2009 explained this is "a class action on behalf of those who purchased RBS securities through several public offerings and on the open market between March 1, 2007 and January 19, 2009, inclusive ('Exchange Act Class Period') and investors who purchased RBS Series Q, R, S, T and U preferred share offerings." ¶1; *see also* Dismissal Order at 12-13.  It also confirmed that MassPRIM and MissPERS were serving as "Co-Lead Plaintiffs on behalf of the putative class of Plaintiffs who owned the ordinary shares of RBS" and the "Freeman Group [was serving as] Lead Plaintiff on behalf of the putative class of Plaintiffs who purchased RBS preferred shares." ¶71; *see also* Dismissal Order at 19-23.  The

---

[4]     RBS's Common ADS were not listed on the NYSE until October 17, 2007.

Consolidated Complaint also confirmed (along with MassPRIM's, MissPERS' and the Freeman Group's respective Certifications) that none of the co-Lead Plaintiffs purchased RBS Common ADS during the Class Period. *See* ¶¶42-44 and ECF Nos. 15, 23; *see also* Dismissal Order at 19-23.

Following entry of the U.S. Supreme Court's *Morrison* decision in June 2010, at the urging of counsel for defendants, the Court requested briefing on *Morrison's* impact on this action in July 2010. *See* ECF No. 146.  The resulting January 11, 2011 Dismissal Order dismissed the claims of all purchasers of RBS's securities, except those brought by purchasers of the Preferred ADS.  Importantly, the claims of the Common ADS purchasers were dismissed **solely because** MassPRIM and MissPERS had **only** purchased "RBS ordinary shares on foreign securities exchanges," and thus lacked "standing to bring domestic ADR claims." *Id.* at 22-23.[5]

## III.   ARGUMENT

### A.    This Court Should Allow Irving Firemen to Intervene

Rule 23(d)(2) governing class actions specifically contemplates the intervention of additional lead plaintiffs "for the protection of the members of the class or otherwise for the fair conduct of the action."[6]  *In re Enron Corp. Sec., Deriv. & ERISA Litig.,* No. MDL-1446, 2004 WL 405886, at *1 fn. 2 and *35-*36 (S.D. Tex. Feb. 25, 2004).  Significantly, the Second Circuit has held that class claims are not rendered moot by the abrogation of the original representative plaintiff's claims "if [a] proposed intervenor[] can be substituted as a named plaintiff," and that

---

[5]    On January 25, 2011, MissPERS moved for reconsideration of that portion of the Court's Dismissal Order withdrawing MissPERS as a co-Lead Plaintiff and its counsel as lead counsel, arguing that MissPERS did purchase in the Series U Preferred Shares offering and  that because it was the only plaintiff who purchased the Series U Preferred Shares, requested that "the Court reconsider its ruling dismissing it from the case to clarify that MissPERS should serve as a named plaintiff and proposed class representative in connection with the Series U Preferred Share Claims," and that "the Order be clarified to reflect that it should continue to be represented by" its own counsel in the action. *See* ECF No. 160.  This motion has no impact on MissPERS' ability to represent the Common ADS purchasers.

[6]    Rule 23(d)(2) states that a leadership "order under Rule 23(d)(1) may be altered or amended from time to time … ."

the "timeliness of intervention should be measured as of the time the application to intervene [is] made." *Swan v. Stoneman*, 635 F.2d 97, 102 at fn. 6 (2d Cir. 1980) (citing 3B MOORE'S FEDERAL PRACTICE 24.13(1) (1980)).  "If intervention is allowed, we see no reason why class certification, assuming the existence of a proper class, may not be made if the intervenor would be a proper class representative." *Id.*  Here, Rule 24 allows intervention, both as a matter of right and on a discretionary basis.

### 1.    Irving Firemen May Intervene as a Matter of Right

"In order to intervene [as of right], an applicant must (1) file timely, (2) demonstrate an interest in the action, (3) show an impairment of that interest arising from an unfavorable disposition, and (4) have an interest not otherwise adequately protected."  *U.S. v. State of New York*, 820 F.2d 554, 556 (2d Cir. 1987); *see also U.S. v. Pitney Bowes, Inc.*, 25 F.3d 66, 70 (2d Cir. 1994) (same); and *Provident Bank v. Cmty. Home Mortg. Corp.*, No. 02-CV-5219, 2005 WL 1801654, at *3 (E.D.N.Y. July 28, 2005).

All four factors are met and Irving Firemen should be permitted to intervene as a matter of right.

### a.    Irving Firemen's Motion to Intervene Is Timely

"With regard to timeliness, among the factors to be taken into account include '(1) how long the applicant had notice of the interest before it made the motion to intervene; (2) prejudice to existing parties resulting from any delay; (3) prejudice to the applicant if the motion is denied; and (4) any unusual circumstances militating for or against a finding of timeliness.'" *Provident Bank,* 2005 WL 1801654, at *3 (citing *Pitney Bowes*, 25 F.3d at 70).  Further, with respect to intervention in class proceedings, the U.S. Supreme Court has written that intervention by a member of the class is timely when the intervenor acts "as soon as it [becomes] clear . . . that the interests of the unnamed class members would no longer be protected by the named class representatives."  *United Airlines, Inc. v. McDonald*, 432 U.S. 385, 394 (1977); *see also Legal Aid Soc'y of Alameda Co. v. Dunlop*, 618 F.2d 48, 50 (9th Cir. 1980) (rather than the date when

the would-be-intervenor became aware of the litigation, the "relevant circumstance" for determining timeliness is when the intervenor "became aware that its interest would no longer be protected adequately by the parties").

Irving Firemen's request to intervene is timely.  Until the Court dismissed MassPRIM's and MissPERS' claims based on ***their own*** lack of standing under *Morrison*, by virtue of the LP Order, other putative class members were prohibited from stepping forward to protect the rights of RBS Common ADS purchasers during the Class Period, ***which are not precluded by Morrison***. Moreover, the case is still at the pleading stage and discovery has not yet begun. Courts in the District and Circuit have routinely granted requests to intervene when sought at the preliminary stage of the litigation. *Id.*; *see also Haddock v. Nationwide Fin. Servs., Inc.*, 262 F.R.D. 97, 101-04 (D.Conn. 2009) (intervention as a matter of right and permissive intervention were both demonstrated).   Further, Defendants will not be unreasonably prejudiced by intervention. *See, e.g., Enron*, 2004 WL 405886, at *35-*36.  Irving Firemen's intervention does not alter the rights of defendants. Irving Firemen agrees to adopt the allegations of the pending Consolidated Complaint, in large part (following opportunity to review), demonstrating lack of prejudice to Defendants because the parties all have had notice of the nature of the claims. Granting the motion to intervene will not prejudice Defendants because intervention will not change the substance of the allegations or hinder discovery.

### b.      Irving Firemen Has Demonstrated Its Interest in the Action

"Here, it is unquestionable that [Irving Firemen] has a direct interest in this action because [Irving Firemen's and the putative class of Common ADS purchasers] claims arise out of the same transactions that are the subject of the instant case." *Provident Bank,* 2005 WL 1801654, at *3.  The Certification and Loss Chart submitted herewith demonstrate Irving Firemen suffered losses of $173,560 on its Class Period open-market purchases of Common ADS. *See* Ex. A.

### c.     These Claims May Be Impaired Unless Irving Firemen Is Permitted to Intervene

Pursuant to the Court's May 5, 2009 LP Order, the claims of the putative class of purchasers of Common ADS were consolidated with the Common Stock claims and MassPRIM and MissPERS were appointed co-Lead Plaintiffs and afforded the only authority to litigate those claims.  As the January 11, 2011 Dismissal Order held that MassPRIM and MissPERS lack standing to prosecute the Common ADS claims, Irving Firemen's and the rest of this putative class' claims may be compromised unless Irving Firemen is permitted to intervene to pursue the claims individually and on behalf of the class.  Given the time that has elapsed since this case was filed, it is reasonable to assume that Defendants will attempt to raise a statute of limitations defense should the Common ADS claims be pled in a separate action.  While Irving Firemen believes it would prevail on this issue, a dismissal of these claims from this case increases the risk that the Common ADS claims would be barred.

### d.     Irving Firemen's Interests Are Not Otherwise Adequately Protected

Finally, because no other party to this action has standing to prosecute the Common ADS claims, "no existing party adequately represents the interests of" the putative class of Common ADS purchasers and so, "[a]ccordingly, [Irving Firemen's] application to intervene in this case pursuant to Rule 24(a)(2) [should be] granted." *Provident Bank,* 2005 WL 1801654, at *3.

### 2.     This Court Should Permit Irving Firemen to Intervene

Rule 24(b) also allows the Court to permit intervention in its discretion.  "The statutory language of Rule 24(b) requires an intervenor to demonstrate first, that the motion is timely, and second, that its claim or defense shares a common question of fact or law with the main action." *In re Ethylene Propylene Diene Monomer (EPDM) Antitrust Litig.,* 255 F.R.D. 308, 315 (D.Conn. 2009).  While "[m]ost courts add a third requirement of showing an independent ground for subject matter jurisdiction," the Second Circuit has not expressly adopted this

provision. *Id.* at 315 and fn. 1.   Regardless, Irving Firemen satisfies all three requirements for permissive intervention.

### a.      Irving Firemen's Request to Intervene Is Timely

"The Second Circuit takes the following circumstances into consideration when determining whether an application to intervene is timely: '(1) how long the applicant had notice of the interest before it made the motion to intervene; (2) prejudice to existing parties resulting from any delay; (3) prejudice to the applicant if the motion is denied; and (4) any unusual circumstances militating for or against a finding of timeliness.'" *Id.* (quoting *In re: Bank of New York Deriv. Litig.*, 320 F.3d 291, 300 (2d Cir. 2003)).   For all of the reasons detailed above in §II.A.1., Irving Firemen's motion to intervene is timely.

### b.      Common Questions of Law and Fact Exist Between Irving Firemen's Claims and the Main Action

"A party seeking to intervene under Rule 24(b) must next show that it shares a common question of law or fact with the underlying suit." *Ethylene Propylene Diene Monomer (EPDM) Antitrust Litig.*, 255 F.R.D. at 316.   Even where the proposed intervenor's legal claims seek different "damages" under different statutory schemes, so long as "[t]he two suits share many similar questions of fact and law," "the second threshold requirement for permissive intervention" is met. *Id.*

Irving Firemen's claims are based upon the same alleged misconduct as the underlying action – defendants' public misstatements about RBS's exposure to subprime mortgage investments which artificially inflated the value of RBS's publicly traded securities and caused losses to Irving Firemen and the putative class.   In fact, the claims Irving Firemen intends to prosecute ***are already pled in the Consolidated Complaint.***   While the particular violations of the federal securities laws pled differ between the Preferred ADS claims (which arise under the Securities Act) and the Common ADS claims (which arise under the Exchange Act), it is indisputable that Irving Firemen's claims and the claims asserted in the underlying action have common and overlapping questions of fact and present similar, though not identical, questions of

9

law.  *Id.*[7]  Thus, the proposed intervenor will be litigating the claims already asserted by plaintiffs.

### c.  Though It Is Not Required, Irving Firemen Can Show an Independent Ground for Jurisdiction

It has long been settled that independent grounds for jurisdiction are not required for intervention by a member of a class who will be bound by the judgment. 7C C.A. Wright, A.R. Miller & M.K. Kane, Federal Practice and Procedure Civil 2d §1917 (1990). However, even if it were required, Irving Firemen satisfies this element.

Irving Firemen's claims against Defendants arise under the federal securities laws and are identical in all material respects to those alleged in the Consolidated Complaint because they purchased Common ADS during the securities fraud Class Period pled in the Consolidated Complaint.  As such, "[t]he general concern that intervention might be used to circumvent the standard rules of subject matter jurisdiction in federal court is not an issue here because the third-party is not asking the court to exercise jurisdiction over an additional claim on the merits" that is not already in the case.  *Ethylene Propylene Diene Monomer (EPDM) Antitrust Litig.*, 255 F.R.D. at 316-17.  Indeed, Irving Firemen's Class Period purchases and sales not only establish jurisdiction and standing, but also make clear that Irving Firemen is not subject to a motion alleging that it has no economic loss.  *See In re Calif. Micro Devices Sec. Litig.*, 168 F.R.D. 276, 277 (N.D. Cal. 1996).  Therefore, pursuant to §27 of the Exchange Act, and 28 U.S.C. §1331(a),

---

[7]  Here, numerous questions of law and fact are in common as Irving Firemen will assert claims that are based on precisely the same facts that support the claims being pursued on behalf of the Preferred ADS purchasers.  Generally, courts "appear to be particularly amenable to permissive intervention when no additional issues are presented to the case, when the intervenor's claims are 'virtually identical' to class claims, and when intervention would strengthen the adequacy of the class representation." 3 Herbert, Newberg & Alba Conta, Newberg on Class Actions §16.08.09 (3d ed. 1992); *see also Trief v. Dun & Bradstreet Corp.*, 144 F.R.D. 193, 202 (S.D.N.Y. 1992) ("Intervention of class representatives to ensure adequate class representation is highly desirable.").  Moreover, Irving Firemen seeks to intervene based on its review of the Consolidated Complaint and has adopted the Consolidated Complaint, as it stands, subject only to any modifications that this Court may allow.  As a result, "[n]o doubt exists as to the precise and detailed nature of the intervenors' claim." *McCausland v. S'holders Mgmt. Co.*, 52 F.R.D. 521, 524 (S.D.N.Y. 1971); *see also United States Steel Corp. v. Multistate Tax Comm'n,* No. 72 Civ. 3438 (CHT), 1974 WL 172930, at *3 (S.D.N.Y. Feb. 5, 1974) (original plaintiffs' complaint adopted in its entirety).

the Court has subject matter jurisdiction over Irving Firemen's claims, just as it has jurisdiction over the claims asserted in this action.

For all the reasons detailed above, Irving Firemen meets the standards of both intervention as a matter of right and permissive intervention under Rule 24.

### 3.    Irving Firemen Should be Substituted as Lead Plaintiff

With this Court's January 11, 2011 decision, there is no Court-appointed lead plaintiff to prosecute the claims of Common ADS purchasers, and Irving Firemen should be permitted to fulfill that role. That separate lead plaintiffs should be appointed to pursue the claims of common share purchasers versus the claims of preferred share purchasers was recognized by this Court when it created the separate leadership structure for the common shares in its May 5, 2009 decision to appoint MassPRIM and MissPERS as co-Lead Plaintiffs in the first place. *See* ECF No. 57 at 8-10 (the "LP Order").

Moreover, where, as here, a substitute lead plaintiff is required to represent interests of certain putative class members, the lead plaintiff selection process in the Private Securities Litigation Reform Act of 1995 ("PSLRA") need not be reinstituted as additional plaintiffs are "not subject to the PSLRA's lead plaintiff provisions as matter of the statute's text or its drafters' purposes." *In re Portal Software, Inc. Sec. Litig.*, No. C-03-5138 VRW, 2005 U.S. Dist. LEXIS 41178, at *10-*14 (N.D. Cal. Mar. 9, 2005). As the Second Circuit Court of Appeals found in *Hevesi v. Citigroup Inc.*, 366 F.3d 70, 82-83 (2d Cir. 2004), such "determinations, … are part and parcel of the District Court's management of the consolidated class action," and "the PSLRA does not in any way prohibit the addition of named plaintiffs to aid the lead plaintiff in representing a class." *Id.* at 82-83; *see also In re IMAX Sec. Litig.*, Master File No. 06-Civ-6128(NRB), 2009 WL 1905033, at *3-*4 (S.D.N.Y. June 29, 2009) (replacing a previously appointed lead plaintiff later deemed to lack standing with one who had standing); *In re SLM Corp. Sec. Litig.*, 258 F.R.D. 112, 116-17 (S.D.N.Y. 2009) (same); *In re Bank of America Corp. Auction Rate Sec. (ARS) Mktg. Litig.*, No. MDL 09-02014, 2009 WL 2031764, at *1 (N.D. Cal.

July 9, 2009) (same); *In re Impax Labs, Inc. Sec. Litig.*, No. C 04-04802, 2008 WL 1766943, at *7-*9 (N.D. Cal. April 17, 2008) (same); *Cf. In re NYSE Specialists Sec. Litig.*, 240 F.R.D. 128, 133, 140 (S.D.N.Y. 2007) (granting motion to disqualify one co-lead plaintiff but denying motion to substitute because the remaining lead plaintiff could adequately represent the entire proposed class).

Essentially, these cases hold that where a new lead plaintiff is required and one is willing to step forward, there is no need to start the process anew when all putative class members were given notice of the opportunity to move for appointment as lead plaintiff by means of the statutorily required published notice. *NYSE Specialists Sec. Litig.*, 240 F.R.D. at 120, n.5, 142. As the only party before the Court with standing to prosecute these claims, Irving Firemen should be substituted in as the lead plaintiff for the Common ADS purchaser claims.

### 4.    The Court Should Approve Irving Firemen's Choice of Counsel

Irving Firemen has selected the law firm of Scott+Scott LLP as its counsel, a firm which has significant experience in the prosecution of shareholder and securities class actions. *See* Ex. B.  Scott+Scott has served as lead or co-lead counsel in many high-profile actions, directly recovering hundreds of millions of dollars for aggrieved investors and others harmed by corporate chicanery and greed.[8]  For instance, commenting on the speed, legal acumen and tenacity Scott+Scott partners employed in obtaining a temporary restraining order enjoining the

---

[8]    Some recoveries of note for Scott+Scott include, among others: settlement of $80 million for a class of purchasers of Priceline stock in *In re Priceline.com Sec. Litig.*, No. 00-01884 (D. Conn.), a $122 million settlement for purchasers of Mattel stock in *Thurber v. Mattel, Inc.*, No. 99-10368 (C.D. Cal.)  Additional recent securities settlements obtained by Scott+Scott, acting as lead or co-lead counsel, include: *In re Emulex Corp. Sec. Litig.*, No. 01-00219 (C.D. Cal.) (settlement of $39 million); *In re Sprint Sec. Litig.*, No. 00-230077 (Cir. Ct. Jackson County, Mo.) (settlement of $50 million); *In re Northwestern Corp. Sec. Litig.*, No. 03-04049 (D.S.D.) (settlement of $61 million); *Irvine v. Imclone Systems, Inc.*, No. 02-00109 (S.D.N.Y.) (settlement of $75 million); *Schnall v. Annuity and Life Re (Holdings) Ltd.*, No. 02-02133 (D. Conn.) (settlement of $27 million); *In re Qwest Communications International, Inc.*, No. 02-08188 (Colorado District Court, City and County of Denver) (shareholder derivative settlement including significant corporate governance reforms and $25 million for the company); and *In re Lattice Semiconductor Corp. Deriv. Litig.*, No. 043327 (Cir. Ct. Oregon) (significant monetary recovery and business reforms, including termination of the then-CEO, termination and adoption of significant changes to the company's auditing, insider trading, executive compensation and other internal practices); among others.

"off shore transfer of…approximate[ly] $1 billion in assets" held by Madoff "feeder funds," one court recently held that:

> It is this Court's position that Scott+Scott did a superlative job in its representation . . . . For the record, it should be noted that Scott+Scott has demonstrated a remarkable grasp and handling of the extraordinarily complex matters in this case. The extremely professional and thorough means by which [Scott+Scott] has litigated this matter has not been overlooked by this Court. They have possessed a knowledge of the issues presented and this knowledge has always been used to the benefit of all investors.

*New York University v. Ariel Fund Limited*, No. 603803/08, Opinion at 9-10 (New York State Supreme Court, New York County, Feb. 22, 2010), Ex. C.  As demonstrated in the Firm's résumé, Scott+Scott possesses vast resources, both in terms of financial acumen and expertise, and has committed these resources to use for the benefit of aggrieved investors like the putative Class here.  Accordingly, the Court should approve Irving Firemen's selection of counsel.

### B.   The Court Should Partially Reconsider its Dismissal Order and Deny Defendants' Motion to Dismiss the Common ADS Purchaser Claims

Irving Firemen is an institutional investor that has standing and seeks to prosecute the claims on behalf of itself and similarly situated purchasers of Common ADS.  And unlike MassPRIM and MissPERS, Irving Firemen has standing to assert these claims and hereby expresses its intent to represent other investors as a representative plaintiff in this action.  Given that the Common ADS claims have already been pled in the Consolidated Complaint, and Irving Firemen intends to stand on those allegations, it is appropriate for the Court to partially reconsider its Dismissal Order to reflect that Irving Firemen has standing, and the Common ADS claims should not be dismissed.

Rule 59(e) permits parties to move the court to reconsider an order determining a motion "filed no later than 28 days after the entry of the judgment." Fed. R. Civ. P. 59(e).  "A court is justified in reconsidering its previous ruling if: (1) there is ***an intervening change in the controlling law***; (2) new evidence ***not previously available comes to light***; or (3) ***it becomes necessary … to prevent obvious injustice***."  *Atlantic States Legal Foundation, Inc. v. Karg Bros., Inc.*, 841 F.Supp. 51, 53 (N.D.N.Y. 1993) (citation omitted); *see also* 11 Wright & Miller,

FEDERAL PRACTICE AND PROCEDURE §2810.1 at 124-127 (1995).  Local Rule 6.3 also authorizes a Court to reconsider its earlier decisions.  Here, Irving Firemen has moved within 28 days of entry of the Court's Dismissal Order and, for the reasons detailed below, all three grounds for Rule 59(e) reconsideration are satisfied: (i) the entry of the *Morrison,* coupled with this Court's interpretation of *Morrison* in the Dismissal Order, operated as an "intervening change in the controlling law" governing the representative plaintiffs' standing to prosecute these claims; (ii) because court-appointed lead plaintiffs MassPRIM and MissPERS were the only putative class members permitted to advocate on behalf of the putative class of Common ADS purchasers at the time the Court entered the Dismissal Order, the evidence of Irving Firemen's standing was "not previously available" to the Court, and just came "to light"; and (iii) dismissing the putative class of Common ADS purchasers' claims **only** because MassPRIM and MissPERS lacked standing under the newly decided *Morrison* standard would work an "obvious injustice" on them and the class of Common ADS purchasers. *Id.*

Finally, if the Court grants the motion to reconsider, the Court may vacate the original decision (in part), and Rule 15(a) provides that this Court should grant leave to amend freely "when justice so requires."  Fed. R. Civ. P. 15(a); *see also Morin v. Trupin*, 823 F.Supp. 201, 203 (S.D.N.Y. 1993); *Travelers Ins. Co. v. Buffalo Reins. Co.*, 739 F.Supp. 209, 211-13 (S.D.N.Y. 1990); and *Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227 (1962).  Here it would be grossly unjust to deny the claims of Irving Firemen and other class members merely because they relied upon MassPRIM and MissPERS to represent their interests under the LP Order, and failed to anticipate the changes made by *Morrison*.

Indeed, when the LP Order was entered on May 5, 2009, the Court and the parties were operating under the same understanding that, based on well-established pre-*Morrison* governing case law, MassPRIM and MissPERS could, as purchasers of RBS common stock, represent the interests of the Common ADS purchasers.

Those expectations changed only after the U.S. Supreme Court decided *Morrison* on June 24, 2010, and after this Court ordered the parties to brief *Morrison*'s application to this action.

*See* ECF No. 146.  Even following the *Morrison* decision, however, as the Court's Dismissal Order confirms, then co-Lead Plaintiffs MassPRIM and MissPERS adamantly maintained "that: (1) *Morrison* [did] not bar [their] claims relating to the purchase of securities listed on an American stock exchange; (2) MassPRIM and MissPERS purchased their RBS ordinary shares in the United States," and (3) "if the Court permit[ed] MassPRIM and MissPERS to pursue claims based on their purchases of ordinary shares, MassPRIM and MissPERS [could] also represent purchasers of ADRs." Dismissal Order at 5 and 22.  Significantly, as this Court noted, MassPRIM and MissPERS expressly argued that "***Morrison [did] not bar claims based on purchases of ADRs.***" *Id.*

As such, only when MassPRIM's and MissPERS' *own* common stock purchaser claims were dismissed under *Morrison* on January 11, 2010, and MassPRIM and MissPERS were withdrawn as lead plaintiffs for the putative class, did the putative class of Common ADS purchasers (including Irving Firemen) first learn that their federal securities claims were being dismissed – and not because their claims were precluded by *Morrison*, but because MassPRIM and MissPERS lacked standing to pursue them.  *Id.* at 23, 27-29.

In *McCullagh v. Merrill Lynch & Co.*, No. 01 Civ. 7322 DAB, 2004 WL 744484 (S.D.N.Y. April 7, 2004), this Court entertained a Rule 59(e) motion to reconsider a decision dismissing state law claims that had been removed and then dismissed under federal law without permitting amendment of the complaint to state cognizable state law claims, finding that "[a]s for Rule 15(a), Plaintiffs are correct that it requires this Court to grant leave to amend freely 'when justice so requires.'" *Id.*, at *1-*2.  Ultimately, in large part because of the "apparent futility of amendment, the Court … den[ied the *McCullagh*] Plaintiffs leave to amend their complaint." *Id.,* at *2. In so doing, the Court expressly distinguished contrary case law that would have permitted the amendment, finding it was "distinguishable from the present case because while it was clear from the face of the … complaint [in that other action] that some members of the plaintiff class had in fact asserted state law claims that fell outside of the SLUSA ambit," McCullagh's "original complaint in the present case, which was the only pleading before this Court at the time

15

it granted Defendant's motion to dismiss, contains no such claims." *Id.* at *1.  Here conversely, as this Court recognized: "Defendants admit that under *Morrison*, trades on the NYSE fall within the territorial ambit of the Exchange Act." Dismissal Order at 21; *See also* The Royal Bank of Scotland Group plc's Reply to Plaintiffs' Supplemental Memorandum of Law Addressing the Impact of *Morrison v. National Australia Bank Ltd.*, ECF No. 155 at 4, fn. 4 ("the *Morrison* Court had no occasion to decide whether claims based on purchases of NAB's ADRs were cognizable under § 10(b), because such claims had been dismissed below and not appealed," citing *Morrison,* 130 S. Ct. at 2876 n.1).

Similarly, in *Mullen v. Bevona*, No. 95 CIV 5838(PKL), 1998 WL 148426 (S.D.N.Y. March 27, 1998), upon motion under Rule 59(e), the court "reconsider[ed] its decision to deny in part plaintiff's motion to amend" to add a supposedly time-barred claim after "granting defendant's motion for summary judgment," and "[u]pon further consideration, … grant[ed] the motion to amend." *Id.*, at *1; *see also Parks v. Ford*, 68 F.R.D. 305, 309 (E.D. Pa. 1975) ("a motion under Rule 59(e) may be used to vacate the judgment, and thereafter as a device to seek leave to amend the complaint").

In the instant action, the Common ADS purchaser claims have been pled and Irving Firemen has standing to prosecute those claims.  Moreover, as the Court's Dismissal Order confirms, MassPRIM and MissPERS expressly argued (in opposing Defendants' motion to dismiss) that "***Morrison [did] not bar claims based on purchases of ADRs,***" and Defendants acquiesced that *Morrison* did not abrogate the claims.  Dismissal Order at 5.  As such, this Court should revisit its January 11, 2011 decision and deny dismissal of the Common ADS claims.

## IV.    CONCLUSION

For the aforementioned reasons, this Court should authorize Irving Firemen to intervene, substitute Irving Firemen as a lead plaintiff, appoint Scott+Scott LLP as a lead counsel, reconsider and modify its January 11, 2011 decision and enter a new scheduling order permitting Irving Firemen 45 days to amend its Complaint in Intervention and providing for a schedule to answer or move with respect to the Amended Complaint.

DATED:  February 8, 2011          Respectfully submitted,

SCOTT+SCOTT LLP


*/s/  Beth A. Kaswan*
BETH A. KASWAN (BK 0264)
DAVID R. SCOTT (DS 8053)
JOSEPH P. GUGLIELMO (JG 2447)
DONALD A. BROGGI
500 Fifth Avenue, 40th Floor
New York, NY  10110
Tel: 212/223-6444
Fax: 212/223-6334
Email: bkaswan@scott-scott.com
      drscott@scott-scott.com
      jguglielmo@scott-scott.com
      dbroggi@scott-scott.com

and

SCOTT+SCOTT LLP
MARY K. BLASY
707 Broadway, Suite 1000
San Diego, CA 92101
Tel: 619/233-4565
Fax: 619/233-0508
Email: mblasy@scott-scott.com

*Counsel for Irving Firemen's Relief and Retirement Fund*

## CERTIFICATE OF SERVICE

I hereby certify that on February 8, 2011, I caused the foregoing to be electronically filed with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses denoted on the Electronic Mail Notice List, and I hereby certify that I caused the foregoing document or paper to be mailed via the United States Postal Service to the non-CM/ECF participants indicated on the Manual Notice List.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed on February 8, 2011.

*/s/ Beth A. Kaswan*

BETH A. KASWAN (BK 0264)
SCOTT+SCOTT LLP
500 Fifth Avenue, 40th Floor
New York, NY  10110
Tel: 212/223-6444
Fax: 212/223-6334
Email: bkaswan@scott-scott.com

*Counsel for Irving Firemen's Relief and Retirement Fund*

18