UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE ROYAL BANK OF SCOTLAND GROUP PLC SECURITIES LITIGATION | 09 Civ. 300 (DAB) |
| LIGHTHOUSE FINANCIAL GROUP, Individually and On Behalf of All Others Similarly Situated,<br><br>     Plaintiff,<br><br> v.<br><br>THE ROYAL BANK OF SCOTLAND GROUP PLC, *et al.*,<br><br>     Defendants. | 11 Civ. 398 (GBD) |
| ETHAN GOLD, Individually and On Behalf of All Others Similarly Situated,<br><br>     Plaintiff,<br><br> v.<br><br>THE ROYAL BANK OF SCOTLAND GROUP PLC, *et al.*,<br><br>     Defendants. | 11 Civ. 1162 (NRB) |

**LIGHTHOUSE FINANCIAL GROUP LLC'S MEMORANDUM OF
LAW IN FURTHER SUPPORT OF ITS MOTION TO CONSOLIDATE
PURSUANT TO FED R. CIV. P. 42(a) AND IN REPLY TO ETHAN GOLD**

| | |
|---|---|
| **SADIS & GOLDBERG LLP**<br>Charles H. Dufresne, Jr.<br>551 Fifth Avenue, 21st Floor<br>New York, New York 10176<br>Tel: 212-573-6660<br><br>*Counsel for Plaintiff-Movant Lighthouse Financial Group LLC* | **GARDY & NOTIS, LLP**<br>Mark C. Gardy<br>James S. Notis<br>Kira German<br>560 Sylvan Avenue, Suite 3085<br>Englewood Cliffs, New Jersey 07632<br>Tel: 201-567-7337 |

Lighthouse Financial Group LLC ("Lighthouse") respectfully submits this memorandum of law in further support of its motion to consolidate pursuant to Fed. R. Civ. P. 42(a) and in reply to the memorandum of law submitted by Ethan Gold ("Ethan Gold").[1]

## INTRODUCTION

Lighthouse, a purchaser of RBS American Depository Receipts ("RBS ADRs"), seeks to consolidate three actions now pending in the Southern District of New York: (1) *In Re Royal Bank of Scotland Group PLC Securities Litigation*, 09 Civ. 300 (DAB) (the "Consolidated Action"); (2) *Lighthouse Financial Group LLC v. Royal Bank of Scotland Group PLC et al.*, 11 Civ. 398 (GBD) (the "*Lighthouse* Action"); and (3) *Gold* v. *Royal Bank of Scotland Group PLC et al.*, 11 Civ. 1162 (NRB) (the "*Gold* Action") (collectively, the "Actions"), because the Actions arise out of the same transactions and occurrences and are against many of the same defendants. The Actions are also all in the earliest stages of litigation and their consolidation would not only promote judicial efficiency, but would protect the interests of the purchasers of the RBS ADRS (the "ADRs Class") as well as ease the burden on the defendants of propounding discovery in separate actions. As provided in Lighthouse's opening papers, courts have generally consolidated claims asserted under the Securities Exchange Act of 1934 and the Securities Act of 1933, finding that consolidation of those claims would not cause delay or increased expenses. *See e.g., In re General Electric Sec. Litig.*, 09 Civ. 1951, 2009 WL 2259502, at **2-3 (S.D.N.Y. July 29, 2009); *In re Century Aluminum Co. Sec. Litig.*, No. C. 09-1001, 2009 WL 2905962, at *2 (N.D. Cal. Sept. 8, 2009).

---

[1] Lighthouse will file a separate memorandum of law in reply to the Lead Plaintiff The Freeman Group's Memorandum of Law in Opposition to Lighthouse Financial Group LLC's Motion to Consolidate Pursuant to Fed. R. Civ. P. 42(a).

1

While Gold supports the consolidation of the *Gold* Action with the *Lighthouse* Action, Gold objects to consolidation of all three Actions. Gold's "vigorous" objection to Lighthouse's motion to consolidate is without merit. Gold, an individual purchaser of a small number of RBS ADR shares (he lost $1,802.47), waited until after the statute of limitations for his claims expired to file an action, and is now seeking to piggyback on Lighthouse's diligent filing of a timely complaint. Not only is Gold's class action untimely, but Gold has not shown that he would adequately represent RBS ADRs purchasers. Moreover, Gold's issuance of a notice pursuant to the Private Securities Litigation Reform Act (PSLRA), where none was required, smacks of tactical maneuvering to secure a leadership position by trolling for a new client with larger losses to replace inevitably Gold. For those reason, and as more fully detailed herein, the Court should enter an Order granting Lighthouse's motion to consolidate.

## LEGAL ARGUMENT

**I.    THE EXCHANGE ACT DOES NOT COMPEL RENEWAL OF THE PSLRA PROCESS MORE THAN TWO YEARS INTO A LITIGATION**

   **A.    Gold's New Lead Plaintiff Process is Not Warranted**

The PSLRA is a clearly delineated process, which provides for a court's selection of a lead plaintiff at the very outset of the litigation. The PSLRA further provides that where multiple actions are filed, notice must only be provided by the plaintiff in the first filed action. *See* 15 U.S.C. § 78u–4(a)(3)(A)(ii) ("If more than one action on behalf of a class asserting substantially the same claim or claims arising under this subchapter is filed, only the plaintiff or plaintiffs in the first filed action shall be required to cause notice to be published in accordance with clause (i)."). Once notice has been provided to the class, the Court may select a lead plaintiff and lead counsel. *See* 15 U.S.C. § 78u–4(a)(3)(B) (Not later than 90 days after the date on which a notice is published under subparagraph (A)(i), the court … shall appoint as lead

2

plaintiff the member or members of the purported plaintiff class that the court determines to be most capable of adequately representing the interests of class members ….").  Here, the lead plaintiff process has long since past.  A complaint on behalf of purchasers of RBS ADRs and a notice pursuant to the PSLRA informing *all* potential plaintiffs of the action ("PSLRA Notice") were both dated January 12, 2009.  *See* Dkt. 12-5 in 09 Civ. 300 ("SAN DIEGO – June 12, 2009 Coughlin Stoia Geller Rudman & Robbins LLP … today announced that *a class action has been commenced in the United States District Court for the Southern District of New York on behalf of purchasers of the Royal Bank of Scotland Group plc … American Depository Shares ("ADSs")* pursuant and/or traceable to a false and misleading registration statement and prospectus … issued in connection with the Company's June 2007 initial public offering….If you wish to serve as lead plaintiff, you must move the Court no later than 60 days from today.") (emphasis added).  Thereafter, nine motions to consolidate and appoint lead were timely filed by nine additional plaintiffs and the court consolidated the ten actions and chose from among the ten applicants the State Funds and the Freeman Group as Co-Lead Plaintiffs on May 5, 2009.[2]  *See* Dkt. 57 in 09 Civ. 300.

    Now, Gold is contending that the PLSRA process should begin anew.  Here, both Lighthouse and Gold seek to stand in the shoes of the State Funds, who were found to lack standing years after the class action commenced and to revive previously dismissed claims.  As, such, the PSLRA does not mandate filing additional notice in this case because notice was already published on January 12, 2009, more than two years prior to the filing of the *Lighthouse* and *Gold* Actions and was directed to purchasers of RBS ADRS.

---

[2]  The "State Funds" are Massachusetts Pension Reserves Investment Management Board and the Public Employees Retirement System of Mississippi.  The "Freeman Group" is the surviving lead plaintiff in the Consolidated Action and consists of individuals who purchased preferred shares from each of RBS Series Q, R, S, and T.

Indeed, the Second Circuit has previously rejected an appeal of a district court's approval of an additional plaintiff to cure the deficiencies of the prior lead plaintiff without undertaking a new PSLRA lead plaintiff process.  *See Hevesi v. Citigroup Inc., et al.*, 366 F.3d 70, 82-83 (2d Cir. 2004).  The Court rejected the argument that the additional plaintiffs could not be included without first satisfying "the rigors of the PLSRA's lead plaintiff scrutiny," finding instead that the PSLRA did not prohibit the addition of named plaintiffs to aid in representing the class.  *Id.*  The Second Circuit held that the "District Court's determination that the addition of three named plaintiffs would help the lead plaintiff represent the interest of the class as a whole was not a legal decision that [the Court] review[s] *de novo*; instead, it was a managerial judgment that is entitled to deference." *Id.* at 83.

Similarly, relying in part on *Hevesi,* a Northern District of California court rejected defendants' argument that a renewed lead plaintiff process was required with the addition of a named plaintiff to represent a separate claim on behalf of the class.  *See In re Portal Software, Inc. Sec. Litig.*, No. C-03-5138, 2005 U.S. Dist LEXIS 41178, at \*\*10-14 (N.D. Cal. Mar. 9, 2005).  In that case, lead plaintiff sought to amend his complaint under the Exchange Act and add claims under the Securities Act six months after the court completed the PSLRA process and nearly a year into the litigation. *Id.* at \*3.  The Court rejected defendants' contention that a new lead process was required, noting:

> The PSLRA contains no express provision addressing the situation now before the court.  Indeed, the statute does not contemplate any sort of lead-plaintiff proceedings beyond the very earliest stages of the litigation…. ***The absence of statutory lead-plaintiff mechanics for suits already in progress stands in stark contrast to the detailed mechanics cited above for suits that are only just beginning.  This alone suggests that Congress contemplated invoking the PSLRA's lead plaintiff process only once – at the very beginning of the suit***.

*Id.* at \*\*9-10 (emphasis added).  Moreover, the court found that the dual purposes of the PSLRA, namely, notice and presumption of adequacy, would not be served by repeating the process

4

months into the litigation. *Id.* at 11-14.  In particular, notice had already been provided to the class and there was no further value in publishing additional notice.  *Id.* at 12.  As to the adequacy of representation prong, the Court concluded that "[i]t would turn securities litigation into a game of snakes and ladders to hold that any time a new plaintiff is added, the action must 'go back to square one' and recommence the PSLRA lead plaintiff selection process."  *Id.* at 14; *see also In re Impax Laboratories, Inc. Sec. Litig.*, No. C 04-04802, 2008 WL 1766943, **7-9 (N.D. Cal. April 17, 2008); *see also In re Initial Public Offering Sec. Litig.*, 214 F.R.D. 117, 120 (S.D.N.Y. 2002) (rejecting the re-opening of the lead plaintiff process upon withdrawal of a lead plaintiff, finding that, "where a new lead plaintiff is willing to step forward, there is no need to start the process anew when all putative class members were given notice of the opportunity to move for appointment as lead plaintiff by means of statutorily required published notice"); *In re Initial Public Offering Sec. Litig.*, 224 F.R.D. 550, 552-53 (S.D.N.Y. 2004); *In re Baan Co. Sec. Litig.*, No. 1:98CV2465, 2002 WL 32307825, at *2 (D.D.C. July 19, 2002) (same).[3]

### B. Gold Could Not Serve as an Adequate Class Representative

Gold's contention that he seeks to effectuate a new PSLRA process is suspect.  Gold, an individual investor, purchased just 23 shares of RBS ADRs (which he ultimately sold at a loss of $1,802.47) during the class period.  Congress enacted the PSLRA in order to "increase the likelihood that parties with significant holdings in issuers, whose interests are more strongly aligned with the class of shareholders, will participate in the litigation and exercise control over

---

[3] Lighthouse also notes that Irving Fireman's Relief and Retirement Fund ("Irving Fire") has joined Gold in criticizing Lighthouse's contention that the PSLRA does not require a new lead plaintiff process.  Irving Fire's position is surprising given that it has sought to serve as substitute lead plaintiff in the Consolidated Action and contended that a new lead plaintiff process was not required.  *See* Dkt. 166.  Irving Fire also raised concerns that its claims could be time barred.  Irving Fire has now abandoned both contentions and the Court should therefore reject Irving Fire's current position of convenience.

the selection and actions of plaintiff's counsel." *See* H.R. Conf. Rep. 104-369, U.S. Code Cong. & Admin. News 1995, p. 730. As such, the PSLRA requires that the Court select as lead plaintiff the "person or group of persons" who meet(s) the following three criteria: (1) the candidate must have "filed the complaint or made a motion in response to a notice;" (2) the candidate must have "the largest financial interest in the relief sought by the class," and (3) the candidate must otherwise satisfy the requirements of Rule 23 of the Federal Rules of Civil Procedure ("Rule 23"). 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).

Rule 23(a) provides that a class may be certified, and a party may serve as a class representative, if: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a). Of these prerequisites, only typicality and adequacy should be examined at this stage. *See, e.g., In re Olsten Corp. Sec. Litig.*, 3 F. Supp. 2d 286, 296 (E.D.N.Y. 1998); *In re Orion Sec. Litig.,* No. 08 Civ. 1328, 2008 WL 2811358, at *4 (S.D.N.Y. Jul. 8, 2008). In order to meet the adequacy prong a proposed lead plaintiff must demonstrate: (1) a common interests between the plaintiff and the class; (2) the plaintiff's attorney must is qualified, experienced, and generally able to conduct the proposed litigation; and (3) the plaintiff has "sufficient interest in the outcome to ensure vigorous advocacy." *In re Orion,* 2008 WL 2811358, at *4 (internal quotation omitted).

Taking both the PSLRA and the Rule 23 factors into consideration, it is clear that Gold could not serve as the lead plaintiff for the Class purchasers of RBS ADRs. Gold – an individual investor with only modest losses – does not have sufficient financial interest to vigorously advocate for the ADRs Class. Instead, Gold is nothing more than a figurehead plaintiff whose

only basis in the litigation is to allow his counsel to publish notice – though such notice is not required – in the hopes of advertising to solicit a better representative to lead the ADRs Class in contravention to the central tenet of the PSLRA.

Indeed, having slept on his claims and let the statute of limitations expire, Gold has not "vigorously" advocated for the interests of the ADRs Class. Gold contends that the *Lighthouse* Action has tolled the statute of limitations not just for *individual* claims, but for his successive *class* claims. Gold's assertion is not supported by any authority and in fact appears to be contrary to relevant Second Circuit law.

The Supreme Court first articulated the tolling doctrine for class actions in *American Pipe & Const. Co. v Utah*, in which it held that members of a putative class were not barred by the statute of limitations from moving to intervene to assert claims on their own behalf after the court denied class certification. 414 U.S. 538, 553 (1974). In *Crown, Cork & Seal v. Parker*, the Supreme Court clarified the ruling in *American Pipe* and held that members of the initial putative class could either move to intervene in the original action or commence their own *individual* actions following denial of class certification. 462 U.S. 345, 354 (1983). While both *American Pipe* and *Crown, Cork* dealt with tolling of the statute for successive individual actions, the Second Circuit has since addressed the application of the tolling doctrine to successive class actions in *Korwek v. Hunt,* 827 F.2d 874 (2d Cir. 1987). In *Korwek,* short sellers of silver futures contracts brought a class action alleging that individuals and firms conspired to manipulate the silver futures market. *Id.* at 875. The district court certified a class that was narrower than the class sought by the named plaintiffs. *Id.* at 875-76. Putative plaintiffs who found themselves outside of the scope of the certified class filed a new class action complaint, which the court held was time barred.

The Second Circuit affirmed, holding that *American Pipe* tolling does not apply to successive class actions that seek to bring substantially the same claims. *Id.* at 879. Relying on other Circuits, the Second Circuit raised concern about plaintiffs' attempts "piggyback one class action onto another and thus toll the statute of limitations indefinitely" and held that extending tolling to such actions "would be inimical to the purposes behind the statutes of limitation and the class action procedure." *Id.* at 878, 879 (internal citations and quotation omitted); *see also Griffin v. Singletary*, 17 F.3d 356, 359-60 (11th Cir. 1994) (distinguishing the "piggyback" rule for successive class actions and individual actions and finding that while the statute of limitations was not tolled for successive class claims, the statute of limitations was tolled for successive individual claims). Nor could the State Funds – who lacked standing to bring claims on behalf of purchasers of RBS ADRs – toll the statute of limitations on behalf of the Class, for as recently held by Judge Crotty, "where a Plaintiff lacks standing – there is no case. And if there is no case, there can be no tolling." *See New Jersey Carpenters Health Fund v. DLJ Mortgage Capital, Inc., et al.,* 08 Civ. 5653 (PAC) at 4 (Dec. 15, 2010).

Having failed to bring a timely action, Gold is now attempting to "piggyback" his action on to the *Lighthouse* Action. Although *Korwek* dealt with a different procedural posture, the Second Circuit's rationale stands. Indeed, if Defendants raise this issue during the class certification process, under *Korwek*, the ADRs Class' claims will be lost and *all* purchasers of RBS ADRs would be left with only individual claims.[4]

---

[4] Gold's reliance on *In re NovaGold Res. Inc. Sec. Litig.*, 629 F. Supp. 2d 272 (S.D.N.Y. 2009) is misplaced. That case did not address the issue of tolling (much less with tolling of successive class actions), but instead dealt with application of the statute of limitations in the same action.

**CONCLUSION**

For the reasons stated above, Lighthouse respectfully requests that the Court consolidate *Lighthouse Financial Group LLC v. Royal Bank of Scotland Group PLC*, 11 Civ. 398 (GBD) with *In Re Royal Bank of Scotland Group PLC Securities Litigation*, 09 Civ. 300 (DAB) and *Gold* v. *Royal Bank of Scotland Group PLC*, 11 Civ. 1162 (NRB), and grant Lighthouse such other and further relief as the Court deems appropriate.

Dated: March 28, 2011                    Respectfully submitted,

**SADIS & GOLDBERG LLP**

By: s/ Charles H. Dufresne, Jr.
    Charles H. Dufresne, Jr. (CD-4864)
551 Fifth Avenue, 21st Floor
New York, New York 10176
Tel: 212-573-6660
Fax: 212-573-6661

**GARDY & NOTIS, LLP**
By: s/ James S. Notis
    James S. Notis (JN-4189)
Mark C. Gardy
Kira German
560 Sylvan Avenue, Suite 3085
Englewood Cliffs, New Jersey 07632
Tel: 201-567-7337
Fax: 201-567-7377

*Counsel for Lighthouse Financial Group LLC*