

12-3642-cv
Freeman Grp. v. RBS Grp.

**MANDATE**

N.Y.S.D. Case #
09-cv-0300(DAB)

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

SUMMARY ORDER

RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 25th day of September, two thousand thirteen.

Present:
      ROBERT A. KATZMANN,
            *Chief Judge*,
      DENNIS JACOBS,
            *Circuit Judge*,
      KEVIN THOMAS DUFFY,
            *District Judge*.[*]

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: October 24, 2013

---

THE FREEMAN GROUP,

    *Plaintiff-Appellant*,

PUBLIC EMPLOYEES' RETIREMENT
SYSTEM OF MISSISSIPPI, IRVING
FIREMEN'S RELIEF AND RETIREMENT
FUND, EDWARD P. ZEMPRELLI, on
behalf of himself and all others similarly
situated, GARY KOSSEFF, individually and
on behalf of all others similarly situated,
    *Plaintiffs*,

---

[*] The Honorable Kevin Thomas Duffy, of the United States District Court for the Southern District of New York, sitting by designation.

MANDATE ISSUED ON 10/24/2013

|  |  |
|---|---|
| v. | No. 12-3642-cv |

THE ROYAL BANK OF SCOTLAND GROUP
PLC, SIR THOMAS FULTON MCKILLOP,
SIR FREDERICK ANDERSON GOODWIN,
GUY WHITTAKER, JOHN CAMERON,
LAWRENCE FISH, GORDON FRANCIS
PELL, COLIN ALEXANDER MASON
BUCHAN, SIR STEPHEN ARTHUR
ROBSON, ROBERT AVISSON SCOTT,
PETER DENIS SUTHERLAND, ARCHIBALD
HUNTER, JOSEPH PATRICK MACHALE,
MERRILL LYNCH, PIERCE, FENNER &
SMITH, INC., GREENWICH CAPITAL
MARKETS, INC., WACHOVIA CAPITAL
MARKETS, LLC, MORGAN STANLEY & CO.
INC., UBS SECURITIES LLC, BANK OF
AMERICA SECURITIES LLC, RBC DAIN
RAUSCHER INC., CITIGROUP GLOBAL
MARKETS, INC., A.G. EDWARDS & SONS,
INC., GOLDMAN SACHS & CO.,

   *Defendants-Appellees*.[**]

| | |
|---|---|
| For Plaintiff-Appellant: | JONATHAN K. LEVINE (Daniel C. Girard, Amanda M. Steiner, *on the brief*), Girard Gibbs LLP, San Francisco, CA |
| For Defendants-Appellees: | SETH P. WAXMAN (Andrea J. Robinson, David S. Lesser, Nolan J. Mitchell, *on the brief*), Wilmer Cutler Pickering Hale and Dorr LLP, Boston, MA |
| | LEWIS J. LIMAN (Mitchell A. Lowenthal, Roger A. Cooper, Matthew M. Bunda, Erica J. Klipper, *on the brief*), Cleary Gottlieb Steen & Hamilton LLP, New York, NY |

  Appeal from the United States District Court for the Southern District of New York (Batts, *J.*).

---

  [**] The Clerk of the Court is directed to amend the caption as shown above.

**ON CONSIDERATION WHEREOF**, it is hereby **ORDERED**, **ADJUDGED**, and **DECREED** that the judgment of the district court be and hereby is **AFFIRMED**.

Plaintiff-Appellant The Freeman Group ("Freeman") appeals from a judgment entered on September 6, 2012 by the United States District Court for the Southern District of New York (Batts, *J.*). That judgment enforced a Memorandum and Order dated September 4, 2012, which granted the Defendants-Appellees' motion to dismiss Freeman's claims under sections 11, 12(a)(2), & 15 of the Securities Act of 1933 ("the '33 Act"), 15 U.S.C. §§ 77k, 77l(a)(2), & 77o. On appeal, Freeman argues that the district court should not have dismissed those claims because Freeman's Amended Complaint ("the complaint") had plausibly alleged that the offering documents for five securities issued and underwritten by the Defendants-Appellees: (1) misstated the exposure of the Royal Bank of Scotland Group PLC ("RBS") to subprime assets; (2) falsely claimed that RBS had effective risk controls; (3) failed to disclose that RBS had maintained an inadequate capital base; and (4) attributed nonexistent benefits to the acquisition of a part of ABN AMRO Bank N.V. ("ABN AMRO"). We assume the parties' familiarity with the relevant facts, the procedural history, and the issues presented for review.

"We review *de novo* the dismissal of a complaint under [Federal] Rule [of Civil Procedure] 12(b)(6), accepting all factual allegations as true and drawing all reasonable inferences in favor of the plaintiff." *Litwin v. Blackstone Grp., L.P.*, 634 F.3d 706, 715 (2d Cir. 2011) (internal quotation marks omitted). On a motion to dismiss a complaint under Rule 12(b)(6), a court must assess whether the complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim

has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

In general, §§ 11 and 12(a)(2) of the '33 Act impose liability on those who issue and underwrite a security whenever that security's registration statement or prospectus (collectively, its "offering documents") contains: "(1) a material misrepresentation; (2) a material omission in contravention of an affirmative legal disclosure obligation; or (3) a material omission of information that is necessary to prevent existing disclosures from being misleading." *Litwin*, 634 F.3d at 715–16; *see also* 15 U.S.C. §§ 77k & 77l(a)(2). Section 15, in turn, imposes liability on anyone who "controls" an entity liable under §§ 11 & 12(a)(2). *Id.* § 77o. A plaintiff cannot prevail on a claim under § 15 without first showing a violation of § 11 or § 12(a)(2). *Dodds v. Cigna Sec., Inc.*, 12 F.3d 346, 349 n.1 (2d Cir. 1993).

Freeman first contends that the offering documents for five securities failed to specify that, in 2005 and 2006, RBS had accumulated a significant concentration of subprime assets—*i.e.*, financial assets secured, either directly or indirectly, by subprime mortgages—something the Defendants-Appellees had a legal obligation to disclose. We conclude that the Defendants-Appellees' disclosures satisfied their legal obligations. Specifically, the securities' offering documents disclosed exposure to tens of billions of pounds worth of securitized assets, including "certain US securitisations of residential mortgages," and identified whether the risks and rewards associated with these assets were completely held, partially held, or had been transferred by RBS. J. App'x at 794. The offering documents further described those assets, explained how RBS had calculated their value, disclosed the dangers it foresaw, and provided an account of how those dangers could affect the assets' value. While these statements did not

4

disclose the percentage of the relevant securitizations that included subprime mortgages, we have previously held that offering documents need not identify every type of asset a security contains so long as they provide "extensive descriptions" of the security's contents that are "broad enough to cover" the type of asset at issue. *Hunt v. Alliance N. Am. Gov't Income Trust, Inc.*, 159 F.3d 723, 730–31 (2d Cir. 1998). In *Hunt*, we declined to require more particularized disclosures even though the specific type of asset at issue allegedly posed "far greater risk[s]" than the general category of assets described. *Id.* at 130. Because the offering documents here extensively described the "securitisations of residential mortgages" that RBS held, we conclude that the Defendants-Appellees had no further obligation to identify the portion of those securitizations that included subprime residential mortgages.

Nor did the offering documents need to disclose RBS's subprime assets in order "to prevent existing disclosures from being misleading." *Litwin*, 634 F.3d at 715–16. First, the offering documents' separate descriptions of an RBS subsidiary's practices when *originating* loans, did not indicate anything about the types of loans included in RBS's securitizations. Moreover, the offering documents' claims that RBS had strong credit quality, that it had few problem loans, and that its risks remained stable all qualified as subjective evaluations of the quality of RBS's assets. Such evaluations did not indicate that RBS held no subprime assets. Instead, they could have just as easily indicated that the Defendants-Appellees regarded the subprime assets RBS held as strong, unproblematic, and stable. Thus, the statements on which Freeman relies would not have led a reasonable investor to conclude that RBS's "securitisations of residential mortgages" did not include any subprime assets.[1]

---

[1] We have not considered Freeman's allegations about claims that RBS senior executives made in response to questions by securities analysts, because Freeman has not explained why the Court should regard those claims as a part of any security's offering documents.

5

Freeman next argues that the securities' offering documents falsely claimed to implement effective risk management procedures. Rather than cite to any example of how RBS disregarded the extensive procedures disclosed in the offering documents, Freeman instead contends that testimony given by RBS executives over two years later reveals that RBS's risk-management procedures were somehow inadequate. But the fact that RBS executives changed their views with the benefit of hindsight does not plausibly indicate that RBS disregarded the procedures it had implemented without that benefit. Moreover, insofar as Freeman challenges the offering documents' characterization of RBS's risk-management procedures as effective, this Court has frequently recognized that similar assurances of efficacy qualify as opinions, which cannot give rise to liability under §§ 11 & 12(a)(2) unless "both objectively false and disbelieved by the defendant at the time [they were] expressed." *Fait v. Regions Fin. Corp.*, 655 F.3d 105, 110 (2d Cir. 2011); *see also ECA, Local 134 IBEW Joint Pension Trust of Chi. v. JP Morgan Chase Co.*, 553 F.3d 187, 205–06 (2d Cir. 2009). Freeman has not plausibly alleged that the Defendants-Appellees, at the time they published the relevant offering documents, actually believed that the risk-management procedures described were not effective.

Similarly, the offering documents' statements about the strength of RBS's capital base and the potential benefits of acquiring ABN AMRO also qualify as opinions. As we have previously explained, determining the amount of capital necessary to balance certain risks "is not a matter of objective fact," but instead "reflect[s] management's opinion or judgment about what, if any," effect certain risks may have on assets' values. *Fait*, 655 F.3d at 113. Moreover, the offering documents' statements about the ABN AMRO acquisition were explicitly couched in subjective terms. *See* J. App'x at 960 ("The combination . . . is expected to create a leading . .

6

. business."); *id.* ("RBS[] believes that ABN AMRO's retail business will provide it with opportunities."). Because these statements qualify as opinions, Freeman must plausibly allege that they were "disbelieved by the [Defendants-Appellees] at the time [they were] expressed." *Fait*, 655 F.3d at 110. Freeman, however, has argued only that, because both RBS and ABN AMRO had large concentrations of subprime assets, the Defendants-Appellees had no reasonable basis for believing the statements contained in the offering documents. But, as the complaint acknowledges, at the time the Defendants-Appellees published the offering documents, multiple rating agencies had given their highest ratings to the types of subprime assets held by RBS and ABN AMRO. Thus, Freeman's general argument that the Defendants-Appellees could not have believed their opinions fails, and, in the absence of any more specific argument, Freeman has not plausibly alleged that the Defendants-Appellees disbelieved the offering documents' claims about the strength of RBS's capital base or the potential benefits of acquiring ABN AMRO.

Finally, Freeman argues that the district court abused its discretion by refusing to allow Freeman to amend its complaint. We review a district court's denial of leave to amend for abuse of discretion. *Sista v. CDC Ixis N. Am., Inc.*, 445 F.3d 161, 177 (2d Cir. 2006). In its brief opposing the Defendants-Appellees' motion to dismiss, Freeman made only a one-sentence request for leave to amend, failing to identify any additional facts that it would allege in support of its claims. We have previously held that "[i]t is within the [district] court's discretion to deny leave to amend implicitly by not addressing the request when leave is requested informally in a brief filed in opposition to a motion to dismiss." *In re Tamoxifen Citrate Antitrust Litig.*, 466 F.3d 187, 220 (2d Cir. 2005), *abrogated on other grounds by FTC v. Actavis, Inc.*, 133 S. Ct.

7

2223 (2013). Moreover, even on appeal, Freeman has not identified any new facts that, if pleaded, "could cure the deficiencies that led to the dismissal of [its initial] complaint." *Wilson v. Merrill Lynch & Co., Inc.*, 671 F.3d 120, 140 (2d Cir. 2011). Thus, the district court did not err by denying leave to amend.[2]

We have considered Freeman's remaining arguments and find them to be without merit. For the reasons stated herein, the judgment of the district court is **AFFIRMED**.

FOR THE COURT:<br>
CATHERINE O'HAGAN WOLFE, CLERK

---

[2] Because we affirm the district court's decision based on Freeman's failure to plead a claim under [...] he Defendants-Appellees' alternative arguments

A True Copy
Catherine O'Hagan Wolfe, Clerk
United States Court of Appeals, Second Circuit